STATE of Missouri, Plaintiff–Respondent,

v.

Gerald SANDERSON, Defendant–Appellant.

No. 26412.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 11, 2005.

Amy M. Bartholow, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Gerald Sanderson ("Defendant") was charged by information with committing the class B felony of possessing, with intent to distribute, more than five grams

of marijuana. *See* § 195.211.[1] By amended information, the State also alleged that Defendant was a prior and persistent offender. *See* § 558.016. At the commencement of the trial, the judge found Defendant to be a prior offender beyond a reasonable doubt. After the jury found Defendant guilty of the charged offense, the trial court determined punishment and sentenced Defendant to a fifteen-year term of imprisonment. *See* § 557.036.4(2).

This appeal arises out of a traffic stop that took place on I–44 on January 21, 2004. Defendant was riding as a passenger in a blue Buick sedan driven by Dennis Vargas ("Vargas"). The car was stopped for speeding by Missouri State Highway Patrol Corporal Gary Braden ("Cpl. Braden"). During this stop, Cpl. Braden discovered 10 pounds of marijuana in the vehicle's trunk. After the marijuana was found, Defendant and Vargas were arrested. When Defendant was later searched at Troop D headquarters by Cpl. Braden, another 13.9 grams of marijuana was found in a baggie hidden in the crotch of Defendant's pants.

Defendant and Vargas were each charged with possession of a controlled substance with intent to distribute. Vargas pled guilty and was sentenced to prison. He was called as a witness at Defendant's trial. Vargas testified that Defendant knew nothing about the marijuana found in the trunk and that the 13.9 grams found in Defendant's pants was for personal use only. The jury obviously did not believe Vargas' testimony. The only issue on appeal is whether the trial court erred in overruling Defendant's motion for judgment of acquittal at the close of all of the evidence. He claims the evidence was insufficient to establish beyond a reasonable doubt that:

(1) he was aware of or exercised control over the 10 pounds of marijuana found in the Buick's trunk; or (2) he intended to distribute 13.9 grams of marijuana found in his pants after he was arrested. We affirm.

## I.  Standard of Review

When reviewing the sufficiency of the evidence to support a criminal conviction, we give great deference to the trier of fact. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). In the case at bar, the issues of witness credibility and reliability were for the jury to decide. *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). Therefore, we accept as true all evidence tending to prove Defendant's guilt, together with inferences favorable to the State that can be reasonably drawn therefrom. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). We disregard all contrary evidence and inferences. *Id.* The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found that Defendant was guilty beyond a reasonable doubt. *State v. Webber*, 982 S.W.2d 317, 324 (Mo.App.1998).

Defendant initially filed a motion for judgment of acquittal at the close of the State's case. After the State rested, Vargas was Defendant's only witness. The State had no rebuttal evidence, and Defendant renewed his motion for judgment of acquittal at the close of all the evidence. "When a defendant introduces evidence on his own behalf, after the overruling of his motion for judgment of acquittal at the close of the State's case, the sufficiency of the evidence must be determined upon the entire record considering any incriminating evidence developed during the defendant's case." *State v. Rivers*,

---

1.  All references to statutes are to RSMo Cum.    Supp. (2004).

554 S.W.2d 548, 550 (Mo.App.1977); *see State v. Parcel,* 546 S.W.2d 571, 573 (Mo. App.1977). Therefore, as we review the sufficiency of the evidence to support Defendant's conviction, we will consider any evidence favorable to the State that was elicited from Vargas during Defendant's case.

## II. Summary of the Favorable Evidence Presented at Trial

The State's evidence in this case consisted of testimony from Cpl. Braden; photographs of the drugs, air freshener and other items seized at the scene; a videotape of the traffic stop; and a lab report confirming that the green, leafy substance found in the trunk and in Defendant's pants was marijuana.[2] As noted above, Defendant's evidence consisted solely of Vargas' testimony. The following is a summary of the evidence favorable to the jury's verdict.

### *Cpl. Braden's Testimony*

Cpl. Braden is a road and canine officer with the Missouri State Highway Patrol. He had received specialized training in drug interdiction and the use of a drug-detecting dog because I–44 is often used as a route to transport drugs from the southwestern to the northeastern part of the United States. This portion of the interstate highway system has been described as a "drug pipeline" because this road is the route of choice for drug couriers.

At 11:00 a.m. on January 21, 2004, Cpl. Braden was parked on the eastbound shoulder of I–44 near the 52–mile marker in Lawrence County, Missouri. He was accompanied by his drug dog. The officer was using the radar device in his car to check the speed of eastbound traffic. He observed a blue Buick Park Avenue with a Texas license plate that was traveling 75 miles per hour in a 70 mile per hour zone. When Cpl. Braden pulled off of the shoulder, the Buick slowed drastically. Its speed dropped from 75 miles per hour to between 60 and 63 miles per hour. Cpl. Braden followed the Buick for three or four miles, observing the vehicle. The Buick weaved continuously in its lane as it traveled east. At one point, the car crossed the fog line and drove partially onto the shoulder of the road. Cpl. Braden became concerned that the driver was sleepy or intoxicated and might cause an accident, so he turned on his emergency lights and initiated a traffic stop. Turning on the emergency lights automatically activated a video camera inside the patrol car and created a video and audio recording of the traffic stop.

As Cpl. Braden approached the Buick, he observed a driver and a passenger sitting in the vehicle's front seats. When the driver rolled his side window down, Cpl. Braden smelled the "very very strong odor of air freshener coming from inside the car." This made Cpl. Braden suspicious that the Buick contained marijuana because the use of heavy air freshener is most prevalent in cars transporting this controlled substance. When the officer looked inside the car, he saw a bottle of air freshener in the console between the front seats. The driver was unable to produce a license because he had forgotten to bring it from his home in south Texas. He was able to produce a Texas insurance card, which identified him as Vargas.

Cpl. Braden asked Vargas to get out of his vehicle and come back to the patrol car for a computer check of his driver's license. Cpl. Braden instructed Vargas to

**2.** A duplicate of the videotape was admitted in evidence as State's Exhibit A and played in its entirety for the jury. The traffic stop lasted approximately 30 minutes.

sit in the front passenger seat of the patrol car. Vargas opened the door, but he remained standing outside the car and asked if he could remain there. Cpl. Braden denied the request for reasons of officer safety, cold temperature and road noise. Vargas sat down in the patrol car, but he left the car door open. At Cpl. Braden's request, Vargas finally shut the door. When he did so, Cpl. Braden smelled the very strong odor of marijuana on Vargas' person. The officer's dog also began giving indications that the scent of marijuana was present in the car.

Once Vargas was inside the patrol car, he began talking very fast, cracking jokes and jumping from one topic of conversation to another. Vargas said he lived in San Angelo, Texas, and was headed to St. Louis, Missouri, to spend a week there with his passenger's family. When Cpl. Braden asked what the passenger's name was, however, Vargas was only able to identify the person as "Gerald." Vargas did not know Defendant's last name and had only known him about three weeks. Vargas did not know the names of any members of Defendant's family, and he did not know where they were going to stay in St. Louis. He only knew that Defendant had aunts, uncles or cousins in that town. Although it was only January 21st, Vargas also said he had received his income tax refund and was using that money to pay for the trip. Cpl. Braden found these statements suspicious because: (1) San Angelo is only 200 miles from the Mexican border and is considered a source city for drugs coming from Texas that are transported to St. Louis, Missouri, on I–44; and (2) in prior drug transportation cases, he had encountered the same situation where persons traveling together did not really know much about each other.

After running the license check on Vargas, Cpl. Braden went back to the Buick to speak with Defendant. He produced an identity card which showed that he resided in Phoenix, Arizona. Defendant said he and Vargas were headed to St. Louis to spend the weekend with Defendant's family and were returning to Texas on Sunday. Defendant was very vague and brief in communicating any details of the trip to Cpl. Braden. Furthermore, Defendant's statement that they intended to leave St. Louis on Sunday conflicted with Vargas' account that he and Defendant were going to spend a week in St. Louis together. Cpl. Braden also noted that Phoenix, Arizona, is another source city for drugs that are transported through Missouri on I–44.

When Cpl. Braden returned to his patrol car, he told Vargas about smelling the odor of marijuana on his person. For the first time during the traffic stop, Vargas became very quiet. He then admitted that he and Defendant had smoked marijuana on the trip from Texas. Vargas denied that he had any contraband in his vehicle, but he acknowledged that he and Defendant each had one piece of luggage in the trunk. When Cpl. Braden asked to search the Buick, Vargas consented.

After three other highway patrol troopers arrived and began watching Vargas and Defendant, Cpl. Braden searched the Buick. He found no illegal substances in the passenger compartment, but he did smell the odor of marijuana inside the vehicle. When Cpl. Braden moved to the trunk area, he observed three bags: (1) a blue tote bag sitting beside a large speaker; (2) a black suitcase belonging to Vargas; and (3) a green-and-tan duffle bag belonging to Defendant. Vargas was sitting in the patrol car at that time, observing the search. He asked the trooper watching him if the luggage in the trunk would be opened. Upon receiving an affirmative reply, Vargas told the trooper to tell Cpl. Braden that he should open the

bag beside the speaker. Ten pounds of marijuana were found inside the blue tote bag. This is considered to be a "distribution amount" because it is too much for a person to use in a short period of time. The marijuana was packaged in 10 vacuum-sealed clear plastic bags. When Cpl. Braden opened the blue tote bag, he smelled the slight odor of marijuana even though the material had been packaged in vacuum-sealed bags.

As soon as the marijuana in the blue tote bag was discovered, Vargas made the following statement: "What exactly is considered federal time or state time around here as far as weed—how does that law work? What are we looking at? How does the laws work around here? Is that just state time?" A few moments later, Vargas was inquiring about the type and class of offense with which he might be charged. He then said: "It's not like we f___ had a lot."

Shortly after the marijuana was discovered in the trunk, Vargas and Defendant were arrested and transported to Troop D headquarters in Springfield, Missouri. Once there, Defendant was searched because he had admitted having a baggie of marijuana on his person while being transported from the scene. Cpl. Braden took Defendant to the restroom and retrieved the bag, which had been hidden in the crotch area of Defendant's pants. The marijuana in the baggie weighed 13.9 grams. If no other marijuana had been discovered, this amount of marijuana would be more typical of a personal use amount. Since marijuana is sold by the gram, however, this amount could be distributed.

The Buick was taken to the Troop D garage, and photographs were taken of the car's passenger compartment and trunk. Later laboratory analysis confirmed that the 10 packages of plant matter found in the blue tote bag and in the single baggie removed from Defendant's pants were marijuana.

### Vargas' Testimony

Vargas had lived in San Angelo, Texas, for about 15 years. He was involved in distributing marijuana around Texas. He became acquainted with Defendant, who moved to San Angelo a few weeks before January 21, 2004, because their girlfriends knew each other.

Prior to the trip to St. Louis, Vargas picked up a batch of marijuana weighing over 10 pounds that he was supposed to deliver "somewhere." Vargas expected to make $200 per pound for delivering the marijuana. This drug sold for $500 per pound in Texas, but it was worth more in other states. Vargas packaged the marijuana in 10 vacuum-sealed bags, which he placed in the blue tote bag. He retained a small amount, which he claimed was for "personal use" only, in one individual baggie. He placed the tote bag in the trunk of the Buick. Even though the plastic bags in the blue tote bag were sealed, the marijuana created a detectable smell inside the car. Vargas claimed that he tried to deliver the marijuana on the evening of January 19th and again on the morning of January 20th, but he was unable to do so. Vargas also claimed that, because he was unable to deliver the marijuana, he intended to leave the drugs in the car while he and Defendant spent a week in St. Louis together and then return it to the person from whom he got it. Vargas refused, however, to disclose the identity of the person from whom he obtained the marijuana or the identity of the person to whom he was supposed to deliver the drugs.

Around 8:00 a.m. on January 20th, Defendant walked to Vargas' apartment and loaded his bag in the trunk of the Buick.

The blue tote bag and Vargas' black suitcase were already in the trunk at that time. The pair spent the night at a motel in Oklahoma City, Oklahoma, on the evening of the 20th before resuming their trip to St. Louis the next morning. Vargas and Defendant both smoked marijuana during this segment of the trip. When Cpl. Braden initiated the traffic stop, Vargas handed the small baggie of marijuana to Defendant because Vargas figured he would be the one taken out of the car and questioned.

The jury deliberated only 18 minutes before returning a verdict finding Defendant guilty of possession of more than five grams of marijuana with intent to distribute. This appeal followed.

## III. Discussion and Decision

■ Section 195.211 makes it unlawful "for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." A violation of this section involving more than five grams of marijuana is a class B felony. *Id.* In order to convict Defendant of violating this statute, the State was required to prove the following elements: (1) conscious and intentional possession of the marijuana, either actually or constructively; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it. *See State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo.App.2003). Both possession and knowledge can be proven through circumstantial evidence. *State v. Kerns*, 85 S.W.3d 73, 76 (Mo.App.2002).

Defendant argues the evidence was insufficient to establish beyond a reasonable doubt that: (1) he was aware of or exercised control over the 10 pounds of marijuana found in the Buick's trunk; or (2) he intended to distribute 13.9 grams of marijuana found in his pants after he was arrested. For the reasons set forth below, we conclude that the evidence was sufficient for the jury to find that Defendant constructively possessed the 10 pounds of marijuana found in the trunk of the Buick.[3] Therefore, it is unnecessary to reach Defendant's alternative argument that he did not intend to distribute the marijuana which was found was in his actual possession.

■ Constructive possession exists when a person has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. § 195.010(34); *State v. Booth*, 11 S.W.3d 887, 891 (Mo.App.2000). The State may establish constructive possession by proving that the defendant had access to and control over the premises where the substance was found. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). "A defendant's exclusive control over the premises is sufficient to raise an inference of possession and knowledge. However, joint control of the premises requires further evidence to prove the defendant knew the substance was present and had it under his control." *State v. Villanueva*, 147 S.W.3d 126, 130 (Mo.App.2004) (citation omitted).

■ Here, Vargas and Defendant were both in the Buick where the marijuana was found. In a case like this one involving joint control of an automobile,

---

**3.** Cpl. Braden testified that 10 pounds of marijuana is a distribution amount. Therefore, if Defendant is found to have constructively possessed the 10 pounds of marijuana found in the trunk, intent to distribute may be inferred from the amount of the drug that was seized. *See State v. Fox*, 882 S.W.2d 214, 217 (Mo. App.1994).

"a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *State v. Mickle*, 164 S.W.3d 33, 43 (Mo.App.2005). This additional evidence must demonstrate sufficient incriminating circumstances to permit the inference of a defendant's knowledge and control over the controlled substance. *State v. Bacon*, 156 S.W.3d 372, 378 (Mo. App.2005); *State v. Hendrix*, 81 S.W.3d 79, 83 (Mo.App.2002). Additional incriminating circumstances that will support an inference of knowledge and control include, *inter alia*, the following:

1. Finding a large quantity of marijuana in the Buick. *State v. Sours*, 946 S.W.2d 747, 752 (Mo.App.1997); *State v. Keeper*, 787 S.W.2d 887, 890 (Mo.App.1990).
2. Easy accessibility to the drugs. *State v. Gonzalez*, 108 S.W.3d 209, 211–12 (Mo.App.2003).
3. The odor of marijuana in the car. *Id.* at 212; *State v. Fuente*, 871 S.W.2d 438, 442 (Mo. banc 1994).
4. The presence of defendant's personal belongings in close proximity to the marijuana. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992); *Sours*, 946 S.W.2d at 752.
5. Making false statements in an attempt to deceive the police. *State v. Farris*, 125 S.W.3d 382, 388 (Mo. App.2004).

In determining whether the State has proven sufficient additional incriminating circumstances, we must consider the totality of the circumstances. *Gonzalez*, 108 S.W.3d at 212. We find that all of the additional incriminating factors listed above were present in the case at bar.

First, 10 pounds of marijuana were found in the Buick's trunk. This quantity of marijuana is typically distributed, rather than kept for personal use. The inference that this marijuana was intended for distribution also is supported by the following evidence: (1) Vargas admitted that he regularly distributed marijuana in Texas; (2) both Vargas and Defendant lived in source cities for drugs transported to St. Louis on I–44; and (3) the marijuana was packed in 10 separate plastic bags, each weighing approximately one pound.

Second, the evidence was sufficient for the jury to find that Defendant had easy access to the marijuana. It was being kept in the trunk in a zippered tote bag with no lock on it. Vargas testified that Defendant placed his own luggage in the Buick's trunk on the morning of January 20th. Furthermore, the jury could have disbelieved Vargas' testimony that Defendant did not remove his own luggage from the trunk when the pair stopped for the night in Oklahoma City. Vargas and Defendant both smoked marijuana during the trip from Texas. More importantly, as soon as the marijuana was discovered, Vargas made the following statement: "What exactly is considered federal time or state time around here as far as weed— how does that law work? *What are we looking at?* How does the laws work around here? Is that just state time?" (Italics added.) A few moments later, Vargas was inquiring about the type and class of offense with which he might be charged. He then said: *"It's not like we f___ had a lot."* (Italics added.) On each occasion, Vargas referred to himself and Defendant collectively, which provides ample support for the jury's conclusion that Defendant had both knowledge of, and control over, the marijuana found in the car. This inference is buttressed by the fact that nearly 14 grams of marijuana were found on Defendant's person after he was arrested.

Third, the odor of marijuana could be smelled throughout the automobile. The odor was so strong in the passenger compartment that Vargas and Defendant used copious amounts of air freshener in an attempt to mask the smell, which supports the inference that Defendant was knowingly transporting marijuana. *See State v. Garza*, 853 S.W.2d 462, 464 (Mo.App.1993). Cpl. Braden and Vargas also testified that the 10 pounds of marijuana in the blue tote bag emitted a detectable odor, despite being packed in vacuum-sealed bags. The jury could have inferred that Defendant smelled this distinctive odor when he placed his duffle bag in the trunk.

■ Fourth, Defendant's duffle bag was found in close proximity to the blue tote bag of marijuana when Cpl. Braden searched the trunk. As our Supreme Court noted in *State v. Purlee*, 839 S.W.2d 584 (Mo. banc 1992), "[t]he presence of a large quantity of drugs coupled with ready access to the drugs tends to show conscious possession." *Id.* at 588.

■ Fifth, false statements were made in an effort to deceive the police. Cpl. Braden testified that Vargas said he was going to spend a week in St. Louis with Defendant even though they had just recently met and Vargas did not know Defendant's last name. Vargas also had no idea where or with whom he was supposed to stay in St. Louis, and he lied about the source of the money being used to finance the trip. When Cpl. Braden questioned Defendant out of Vargas' presence, Defendant said their trip was only supposed to last until the following Sunday, January 25th. He gave vague and brief responses to Cpl. Braden's questions about the details of the trip. Based on this evidence, the jury could have concluded that the story being told by Vargas and Defendant about vacationing together in St. Louis was simply not believable.

After considering the totality of the circumstances, we conclude that the State presented sufficient evidence of additional incriminating circumstances to permit the inference that Defendant had knowledge of, and control over, the 10 pounds of marijuana found in the Buick's trunk. Since the State's evidence was sufficient to make a submissible case that Defendant constructively possessed this controlled substance, the trial court correctly overruled Defendant's motion for judgment of acquittal filed at the close of all the evidence. Therefore, Defendant's point on appeal is denied, and the trial court's judgment is affirmed.

PARRISH, P.J., and BARNEY, J., concur.