STATE of Missouri, Respondent,

v.

Dimetrious L. WOODS, Appellant.

No. WD 69194.

Missouri Court of Appeals,
Western District.

March 10, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 28, 2009.

Application for Transfer Denied
June 30, 2009.

Scott Rosenblum, Clayton, MO, for appellant.

Shaun J. Mackelprang, Asst. Attorney General, Jefferson City, MO, for respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and JOSEPH P. DANDURAND,[1] JJ.

JAMES M. SMART, JR., Judge.

Dimetrious Woods appeals the judgment of conviction of drug trafficking in the second degree and his sentence of twenty-five years of incarceration without the opportunity for probation or parole. He complains on appeal that evidence was improperly admitted and that his conviction is not supported by sufficient evidence. The judgment is affirmed.

---

1. Judge Dandurand was a member of this court at the time the case was submitted but has since resigned.

## Facts

Officer Bret Brooks was assisting another officer with a traffic stop near a "ruse checkpoint" on the eastbound route of Interstate 70. A "ruse checkpoint" involves placing signs along an interstate highway presenting a bogus message that a drug checkpoint is ahead. The police intended for the signs to induce drug couriers to exit the interstate in an attempt to avoid the fictitious checkpoint. By design, the exit near the signs was an exit without any commercial services so that non-local traffic would have no reason to take the exit other than to avoid the checkpoint.

A vehicle with two men exited the interstate after seeing the sign. The vehicle turned left onto the overpass. Officer Brooks had observed the vehicle and had begun to cross the overpass from the other direction at the same time. When Officer Brooks and the vehicle passed each other, Officer Brooks noticed the driver make eye contact with him, look "very hard" at him, then continue to look back at him over his shoulder after having passed him. The vehicle then turned and entered onto the interstate, heading in the direction opposite the one it had been taking prior to exiting the interstate.

Officer Brooks turned around and followed the vehicle down the interstate. The vehicle was driving erratically and well above the posted speed limit. He observed the vehicle exit the interstate after changing lanes without signaling. He decided to stop the vehicle for traffic violations. Officer Brooks activated his emergency lights and followed the vehicle as it exited the road and went into a gas station parking lot and pulled up to a gas pump.

The two occupants abruptly exited the vehicle and walked quickly toward the front doors of the gas station. Officer Brooks yelled twice for the two men to halt, at which point the passenger, Dimetrious Woods, turned, looked at the officer, stopped and walked toward him as directed. After a third yell, the driver of the vehicle also complied. Officer Brooks directed Woods back to the vehicle where he sat in the passenger seat. Officer Brooks took the driver of the vehicle a short distance away from the vehicle, advised him of the traffic violations, and asked for his driver's license. The driver was breathing very heavily and his hands were shaking uncontrollably. He had some difficulty removing his driver's license from his pants.

Officer Brooks believed that the actions of the two were indicative that some type of criminal activity was occurring. He did not issue a traffic citation but, instead, asked the driver for permission to search his person. The driver consented. Officer Brooks found two large bundles of cash consisting of hundred dollar bills (not counted) on the driver. Officer Brooks moved the driver to the patrol car and questioned him further about his criminal history while running a computer check on the driver's license. The driver admitted he had been convicted of a narcotics offense in the past and that he was on parole. The driver said that he and Woods were travelling to Columbia from Kansas City. Officer Brooks could tell the driver's heart was beating rapidly.

The records check did not disclose anything new about the driver. Officer Brooks requested permission to search the vehicle. The driver stated that the vehicle was a rental car. The driver said that Woods had rented it and that Woods would have to decide about permission. At that point, which was approximately ten minutes after the initial stop, Officer Brooks called for canine assistance.

Officer Brooks then obtained Woods' license and questioned him in a similar man-

ner. Officer Brooks observed that Woods was anxious. After obtaining permission to search Woods' person, the officer found that Woods possessed two cell phones. It seemed unusual to the officer that Woods had rented a car in St. Louis when he lived in Columbia, and stated that he was travelling to Columbia from Kansas City. Woods revealed that he had a prior narcotics conviction for drug trafficking. Woods refused Officer Brooks' request for permission to search the vehicle.

Twenty-five minutes after the initial stop, two additional officers and a canine arrived. After the canine was allowed time to orient to the location, the dog went to work. The dog "indicated" on the vehicle. An officer opened the trunk to reveal brown packages which revealed cocaine when opened. Woods and the driver of the vehicle were arrested. Officer Brooks discovered a large bundle of cash consisting of hundred dollar bills (not counted) on Woods' person.

Woods filed a motion to suppress all evidence obtained from the stop based on a violation of his Fourth Amendment rights. After a hearing, the motion was denied. Woods renewed his objection at trial when the evidence of the cocaine was offered by the State. The evidence was admitted over his objection. Woods further objected on the same basis to any and all statements procured during the stop and the currency seized from his person.

Woods moved for a judgment of acquittal at the close of the State's case based on insufficient evidence that he had any knowledge of or control over the cocaine located in the trunk of the rental vehicle. The motion was denied. He again moved for a judgment of acquittal at the close of all evidence, which was also denied. Woods was convicted of the class A felony of trafficking on the second degree and was sentenced as a prior drug offender to twenty-five years in the Missouri Department of Corrections.

Woods appeals.

## Analysis

### *Suppression of Evidence*

Woods claims that the evidence obtained when he and the driver of the vehicle were stopped by officer Brooks should have been suppressed because it was discovered through an unlawful search and seizure. He maintains that Officer Brooks unlawfully detained him and the driver of the vehicle for longer than necessary to complete a traffic stop by questioning them regarding matters unrelated to the traffic violation. Woods also argues that Officer Brooks had no reasonable, articulable grounds for suspicion of criminal activity prior to the time it would have taken to complete the traffic stop or thereafter.

"A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). "This Court defers to the trial court's factual findings and credibility determination and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Id.* (citation omitted). "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo.*" *Id.*

 "The Fourth Amendment to the United States Constitution guarantees that individuals will not be subject to unreasonable searches or seizures." *Id.* "The Missouri constitution offers the same level of protection; the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). "A 'seizure' occurs when the totality of the circumstances surrounding the incident indicates that a reasonable

person would have believed that he was not free to leave." *Sund*, 215 S.W.3d at 723. "A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment." *Id.*

■■■ "The fact that the police may detain a person for a routine traffic stop does not justify indefinite detention, however." *Id.* "The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *Id.* Once a traffic stop is complete, the law enforcement officer is required to allow the person to "proceed without further questioning unless specific, articulable facts created an objectively reasonable suspicion that the individual was involved in criminal activity." *Id.*

■■■ The existence of reasonable suspicion is determined objectively. The question is whether the facts available to the officer at that moment would "warrant a man of reasonable caution to believe that the action taken was appropriate." *Pike*, 162 S.W.3d at 472. "Reasonable suspicion is a less stringent standard than probable cause." *Id.* at 473. "Reasonable suspicion may be established with information that is different in amount or content, or that is less reliable, than the evidence required to establish probable cause." *Id.* "The quantity and quality of the information must be considered in the 'totality of the circumstances' to determine whether reasonable suspicion exists." *Id.* "A suspicion is reasonable when the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Hawkins*, 137 S.W.3d 549, 557 (Mo.App.2004).

"The standard is whether, prior to the seizure, the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 558. "What might be considered unremarkable behavior in one particular location and context may be deemed quite unusual in another." *Id.* at 559.

A permissible *Terry* stop may involve conduct that is "ambiguous and susceptible of an innocent explanation." *Id.* "*Terry* ... permits officers to detain persons to resolve the ambiguity." *Id.* "In allowing such detentions, *Terry* accepts the risk that officers may stop innocent people." *Id.* "Such a risk is justifiable ... because a *Terry* stop is a minimal intrusion, simply allowing the officer to briefly investigate further." *Id.*

Acts that separately seem innocent may, when combined, give rise to reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9–10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In addition to nervousness, and evasive and furtive actions on the part of the subjects, the officer's acquisition of knowledge of recent relevant criminal conduct is generally a permissible component of articulable suspicion. *Hawkins*, 137 S.W.3d at 558 (noting that the suspect had been arrested in the past). Certainly, the presence of a large amount of cash in $100 bills was a very significant potential indicator of illegal activity, particularly when combined with the fact of the rental car, and the poor explanation for the rental of the car in St. Louis.

■■ Woods does not challenge the initial stop of the vehicle based on Officer Brooks' observations of traffic violations. Instead, Woods argues simply that Officer Brooks illegally prolonged the otherwise valid traffic stop by investigating whether

Woods and the driver were transporting illegal narcotics.

The entire investigatory scenario in this case, we must remember, arose out of the avoidance by these subjects of the "ruse checkpoint" set up on an interstate that is a major corridor for drug trafficking near Kansas City, which is, according to the testimony, known as a "hub of sorts" for drug trafficking. Officer Brooks testified that in his experience, vehicles that take evasive action similar to that taken in this case have been stopped, and typically have contained drugs of some type. *See State v. Mack,* 66 S.W.3d 706, 710 (Mo. banc 2002) (holding that the defendant's actions indicating he decided to exit the interstate only upon learning that a checkpoint was supposedly ahead coupled with the deceptive ruse checkpoint scheme compels a finding of individualized suspicion).

Additional facts further support a finding of reasonable suspicion of criminal activity. When Officer Brooks' vehicle and Woods' vehicle passed one another on the overpass, the driver of the Woods' vehicle stared "very hard" at Officer Brooks, seemed scared, and continued to look back at Officer Brooks while driving across the overpass. Officer Brooks followed the vehicle onto the interstate and observed it passing other vehicles, speeding in a dangerous and erratic manner, then abruptly exiting the interstate without signaling.

The vehicle pulled into a gas station parking lot. Woods and the driver hurriedly began to exit the vehicle before it stopped moving. Upon exiting, the two men walked quickly toward the truck stop. Officer Brooks had his emergency lights flashing and yelled for the two men to stop. The two men initially ignored him. He had to yell a second time before Woods stopped. The driver stopped when Officer Brooks yelled a third time.

Upon questioning the driver, Officer Brooks observed signs of nervousness. The driver acknowledged a prior drug conviction. The driver consented to search of his person, which, significantly, revealed a "large amount" of currency in $100 bills, of which the officer took note but did not then count. Both Woods and the driver said Woods had rented the vehicle in St. Louis for the purpose of travelling from Kansas City to Columbia.

Clearly these facts together provided an articulable and reasonable suspicion of criminal activity warranting continued temporary detention for investigation. *See, e.g., State v. Bizovi,* 129 S.W.3d 429, 432 (Mo.App.2004) (holding that a defendant's nervousness, improbable story about the timing and reason for his travelling, and other factors provided reasonable suspicion); *State v. Joyce,* 885 S.W.2d 751, 754 (Mo.App.1994) (holding that the use of a rented automobile for a long trip, an unlikely story about the reason for the trip, the vehicle occupant's nervousness, inconsistencies in the vehicle occupant's stories, and other factors gave rise to articulable suspicion).

■■■ Woods focuses upon Officer Brooks' interpretation of the law and his motivation in initiating the traffic stop. Neither is material to this court's analysis. Courts, not police officers, determine the legal consequences of the facts as found by the trial court. In the context of probable cause analysis, the desire of a police officer to have a legitimate reason to search for drugs based on a hunch is irrelevant as long as an actual objective reason existed for the officer's actions at each stage of the process. *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Joyce,* 885 S.W.2d at 756 (rejecting an argument that the issuance of a traffic citation was pretextual and was

done solely to provide a basis for searching for drugs).

■■■ Woods further argues that the length of the detention was not reasonable. Precedent recognizes "the propriety of detention following an investigatory stop, based on 'articulable and reasonable suspicion' of illegal activity." *Joyce*, 885 S.W.2d at 755. If an officer in the course of his duties perceives circumstances giving rise to a reasonable suspicion of law violation, the officer may investigate further. *Id.* at 756.

Woods' argument fails to take into account the fact that as the investigation progressed, additional reasons for suspicion continued to mount. As the additional reasons continued to mount, the officer abandoned the notion of issuing traffic citations in favor of investigating the growing apparent likelihood that drug offenses were being committed. Woods fails to demonstrate the point at which the there were no longer any objective reasons justifying the continued detention and investigation.

The stop began at 8:32 PM when Officer Brooks demanded that Woods and the driver stop in the gas station parking lot. Because he was alone, Brooks proceeded with caution, interviewing the two subjects separately. Officer Brooks questioned the driver and ran routine computer checks on his driver's license. He observed a high degree of nervousness, and the explanation concerning the car seemed less than satisfactory. The driver was a prior drug offender. Upon obtaining consent to search the driver's person, the officer found a large stack of currency in $100 bills. The officer questioned Woods separately. Upon being denied permission to search the vehicle, Officer Brooks called for a canine unit. This call was made at 8:40 PM, eight minutes after the initial stop.

Officer Brooks then questioned Woods and ran routine computer checks on his driver's license. Woods also was extremely nervous, and also had a prior record for drug activity. Woods had no better explanation for why the car had been rented in St. Louis. The officer testified that he was still running the computer checks when the canine unit arrived at 8:55 PM. The dog exited the police vehicle and waited about two minutes to acclimatize. The dog then walked around the vehicle and alerted, indicating that drugs were present. As an officer opened the vehicle's rear door, the dog alerted aggressively on the rear armrest. This occurred at 8:59 PM.

■■■ Thus, twenty-seven minutes elapsed between the stop and the officer's search of the vehicle after the dog alerted. Officer Brooks was actively investigating, questioning the two individuals and running routine computer checks during most of that time; there was no evidence that there was a burdensome period of inactivity waiting for the canine unit. Officer Brooks called for the canine unit a mere eight minutes after the stop was initiated. The canine unit arrived in fifteen minutes, and the canine search was completed four minutes after the canine's arrival. In view of the substantial indicators of drug activity in progress, we cannot say that the length of the detention was unreasonable. *See, e.g., State v. Peterson*, 964 S.W.2d 854, 857 (Mo.App.1998) (finding an investigation of fifteen minutes reasonable); *State v. Logan*, 914 S.W.2d 806, 809 (Mo.App. 1995) (finding length of detention reasonable where canine unit arrived thirty-two minutes after being summoned); *State v. Joyce*, 885 S.W.2d 751, 754–56 (Mo.App. 1994) (finding ten minute period between request for canine unit and dog's arrival reasonable); *U.S. v. Payne*, 534 F.3d 948, 951–52 (8th Cir.2008) (finding a traffic stop of thirty-nine minutes reasonable where

the detaining officer did not exceed the proper scope of the traffic stop and conducted each step of the investigation without undue delay); *U.S. v. Lyons,* 486 F.3d 367, 372–73 (8th Cir.2007) (finding a twenty-five minute wait for a canine unit and a thirty-one minute total detention reasonable where there was no evidence the officers were dilatory in their investigation or that there was any unnecessary delay); *United States v. Donnelly,* 475 F.3d 946, 951, 954 (8th Cir.2007) (holding that a fifty-nine minute detention to wait for a drug dog was reasonable where the officer requested the dog immediately after developing reasonable suspicion); *U.S. v. Sanchez,* 417 F.3d 971, 975 (8th Cir.2005) (finding a forty-five minute detention reasonable where the officers acted diligently to minimize the detention period); *U.S. v. Foley,* 206 F.3d 802, 806 (8th Cir.2000) (finding a stop of under thirty minutes reasonable); *United States v. White,* 42 F.3d 457, 460 (8th Cir.1994) (determining that it was reasonable for an officer to detain a truck for eighty minutes while awaiting the arrival of a drug dog where the officer acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog); *U.S. v. Bloomfield,* 40 F.3d 910, 917 (8th Cir.1994) (finding a detention of one hour reasonable where the detaining officer acted diligently to verify his suspicions as quickly as possible).

Woods argues that Officer Brooks was limited to investigating the traffic violations and issuing a traffic citation. This argument ignores the fact that Officer Brooks' initially was suspicious of criminal activity beyond traffic violations, and as the investigation proceeded, his suspicions only mounted, justifying at each step the actions he took. Because the officer abandoned very early the purpose of issuing traffic citations, we need not analyze the delay under cases such as *State v. Maginnis,* 150 S.W.3d 117 (Mo.App.2004), and *State v. Granado,* 148 S.W.3d 309 (Mo. banc 2004).[2] There is no evidence that the officer attempted to use delay as an investigative tactic or that he purposely prolonged the investigation at any stage. The trial court could reasonably determine under applicable legal principles, assuming the trial court regarded the officer's testimony as credible, that the investigation was not unduly prolonged in violation of Woods' Fourth Amendment rights.

The point is denied.

### Sufficiency of the Evidence

Woods also claims the trial court erred in denying his motion for judgment of acquittal. He maintains that there was insufficient evidence to find beyond a reasonable doubt that he constructively or actually possessed, or had knowledge and control over, the cocaine located in the trunk of the jointly possessed rental car.

"When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998). "Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found

---

**2.** In *Maginnis,* this court held that the police officer's questions outside the scope of a traffic stop delayed the resolution of the traffic violation and impermissibly detained Maginnis beyond what was reasonable in view of the nature of the stop. 150 S.W.3d at 122. In *Granado,* the Missouri Supreme Court held that the police officer impermissibly detained Granado after the conclusion of the traffic stop because no specific, articulable facts developed after the time the stop ended that justified detaining him to ask him further questions. 148 S.W.3d at 312.

the defendant guilty beyond a reasonable doubt." *Id.* "In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.* Great deference is given to the trier of fact. *Id.* The "inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Id.* "Instead, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

Woods was convicted of trafficking drugs in the second degree. Section 195.223 [3] states in relevant part:

> 2. A person commits the crime of trafficking drugs in the second degree if . . . he possesses or has under his control . . . more than one hundred fifty grams of a mixture or substance containing a detectable amount of coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine salts and their optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the foregoing substances.

In defining "possessed" or "possessing a controlled substance," section 195.010(34) states:

> [A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his per-

son or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint.

Woods does not contest that the trunk of the vehicle contained cocaine salts or a mixture containing a quantity of cocaine salts. Instead, he argues that the State presented insufficient evidence that he had knowledge of or control over the cocaine salts.

 "Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband." *State v. McCleod,* 186 S.W.3d 439, 444 (Mo.App.2006). "The State may establish constructive possession by proving that the defendant had access to and control over the premises where the substance was found." *State v. Sanderson,* 169 S.W.3d 158, 164 (Mo.App. 2005). "If there is joint control over premises where drugs were found, further evidence is necessary to connect an accused with the drugs." *State v. Mercado,* 887 S.W.2d 688, 691 (Mo.App.1994).

 In cases involving joint control of an automobile, "a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *Sander-*

---

**3.** All statutory citations are to RSMo Cum. Supp. 2007, unless otherwise stated.

*son*, 169 S.W.3d at 164–65. "This additional evidence must demonstrate sufficient incriminating circumstances to permit the inference of a defendant's knowledge and control over the controlled substance." *Id.* at 165. "In determining whether the State has proven sufficient additional incriminating circumstances, we must consider the totality of the circumstances." *Id.*

■ Additional incriminating circumstances that will support an inference of knowledge and control include the following:

 Finding a large quantity of drugs in the vehicle;

 Finding drugs having a large monetary value in the vehicle;

 Easy accessibility or routine access to the drugs;

 The odor of drugs in the vehicle;

 The presence of the defendant's personal belongings in close proximity to the drugs;

 Making false statements in an attempt to deceive the police;

 The defendant's nervousness during the search;

 The defendant's flight from law enforcement;

 The presence of drugs in plain view;

 Other conduct and statements made by the accused; and

 The fact that the defendant rented the vehicle

*See id.*; *State v. Franco–Amador*, 83 S.W.3d 555, 558–59 (Mo.App.2002) (noting that nervousness or flight alone are insufficient to demonstrate guilty knowledge, but may support such a conclusion with other evidence of guilt within the totality of circumstances); *State v. Johnson*, 81 S.W.3d 212, 215–17 (Mo.App.2002).

Given these guidelines, the State presented sufficient evidence that Woods had knowledge of or control over the drugs found in the vehicle. He rented the vehicle and used it for his personal use. The car contained Woods' mail and other papers belonging to him, and Woods testified that he rented the vehicle for personal use. Over 9,000 grams of a substance containing cocaine salts was found in the trunk of the vehicle. The trunk was not accessible from the passenger compartment. The drugs were not hidden or concealed; they were in plain view.

Woods was travelling along a known drug corridor. He and the driver exited the interstate after a threatened drug checkpoint and began going the opposite direction. Woods and the driver attempted to flee from Officer Brooks by speeding, driving erratically, and by walking away quickly and not responding when initially told to halt. Woods was the owner of the radar detector found in the vehicle and was the one who rented the car.

During Officer Brooks' investigation, Woods was nervous. His hands were shaking, his breathing was heavy. The officer testified that Woods was "nervously" eating a lollipop. Officer Brooks searched Woods and found two cell phones. He subsequently discovered a large bundle of cash on Woods' person.

A bailiff testified at trial that she escorted Woods to the restroom the previous day, and he made incriminating statements to her. She testified that Woods stated: "Don't ever do anything stupid or get into trouble, I'm facing life for some drugs. My family is here and it's very embarrassing. If my partner pleads guilty he can ruin everything for me."

■ Though Woods testified at trial, this court assumes the fact finder did not believe his testimony because he was convicted. It must have found his testimony to be untruthful. "[T]he factfinder is enti-

tled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The State presented sufficient additional incriminating circumstances in the totality of the circumstances demonstrating that Woods' knowledge of or control over the cocaine salts found in the vehicle.

The point is denied.

### Conclusion

The judgment is affirmed.

All concur.