**STATE of Missouri, Respondent,**

v.

**Jason R. LONG, Appellant.**

**No. WD 70022.**

Missouri Court of Appeals,
Western District.

Feb. 23, 2010.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, James B. Farnsworth and Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., MARK D. PFEIFFER, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Jason R. Long appeals the circuit court's judgment convicting him of possession of a controlled substance with intent to distribute. He asserts that the circuit court erred in denying his motion to suppress evidence obtained following the stop of his car by police and in admitting this evidence at trial. In particular, Long contends that the search and seizure was unconstitutional because the police were not justified in making an investigatory traffic stop in that the police did not have a reasonable suspicion that he was involved in a criminal activity. We affirm.

On February 19, 2007, around 12:09 p.m., Detective Geoffrey Jones of the Columbia Police Department was in the area of Seventh Street and Park in Columbia,

Missouri. This area was known to Jones as a high drug trafficking and high crime area. Another officer was in the vehicle with Jones. As the officers were discussing how crime had picked up in the area, Jones saw a black car parked in a parking lot just behind some Housing Authority units. Two people were sitting in the car. Based upon his conversation with the other officer about how crime had picked up in the area, Jones parked his vehicle and watched the black car.

As Jones watched the vehicle, he saw a person walk from a distance (not from the Housing Authority) and approach the car. The person had a brief conversation with the driver, backed away from the car, looked to his left and then to his right, and then re-approached the car. While the person was away from the vehicle, Jones witnessed the driver making movements with his upper body and his hands. When the person re-approached the car, Jones saw the person insert a cupped hand into the driver's front window, remove his cupped hand from the window, and then walk away from the car. The car then drove away.

Jones had been a police officer with the Columbia Police Department since November of 1998 and a narcotics detective since January of 2005. Based upon his experience, he believed he observed a hand-to-hand drug transaction, even though he did not see any drugs, money, or other contraband. A hand-to-hand drug transaction usually consists of an exchange of money for drugs. As a trained narcotics investigator and a law enforcement officer, Jones recognized a specific part of this scenario as a drug deal: making the buyer back away from the space so he or she could not tell where the drugs were stored or the quantity of drugs present.

Because Jones was in plain clothes and operating an unmarked car, he did not approach the car himself. Instead, he radioed other officers to inform them that he had witnessed a suspected drug transaction. He included a description of the car, a license plate number, and the location of the vehicle. Jones then followed the vehicle to make sure the officers stopped the correct car. Shortly thereafter, other officers stopped the car.

Officer Mike Hester of the Columbia Police Department heard Jones's radio transmission and pulled over a black Jetta based solely on the information given by Jones. Officer Jonathan Logan of the Columbia Police Department also responded to the scene. Hester and Logan approached the vehicle and found two people in the car—Jason Long, who was the driver, and a passenger in the front seat. Upon approaching the vehicle, Hester could see money lying on the passenger's lap. Hester told Long that he had information that that they were dealing drugs and asked Long if he would step out of the car and be frisked for weapons. Long complied. As Long put his hands on his head, a baggie containing four rocks of crack cocaine fell from the area near his right hip.[1] Believing it was crack cocaine, Hester placed Long under arrest for possession of a controlled substance and continued his search of Long. Hester found $241 cash in Long's pocket. Thereafter, Logan searched the vehicle and found a cigarette box located in the center console containing one rock of crack cocaine.[2] When the officers took Long to the police station for processing, Long admitted that

1. At trial, the parties stipulated that the substance in the baggie was 1.88 grams of cocaine base.

2. The parties stipulated that the substance was 0.51 grams of cocaine base.

the crack cocaine was his and that it did not belong to his passenger.

Long was charged with possession of a controlled substance with intent to distribute. Prior to trial, Long filed a motion to suppress the drugs and cash found on and around his person after he was stopped by the police. Long claimed that the evidence was obtained through an unlawful search and seizure in violation of his right under the Fourth and Fourteenth Amendments to the United States Constitution. After an evidentiary hearing, the circuit court denied Long's motion to suppress the evidence. Long waived his right to a jury trial, and, on May 6, 2008, the circuit court held a bench trial. After hearing all the evidence and arguments, the circuit court found Long guilty of possession of a controlled substance with intent to distribute and sentenced Long to eight years imprisonment. The circuit court also authorized Long to participate in the 120-day shock incarceration program. Long appeals.

■ In his sole point on appeal, Long asserts that the circuit court erred in denying his motion to suppress the evidence seized from him after he was stopped by the police and in admitting the evidence at trial. In particular, he claims that the evidence was obtained as a result of an unlawful search and seizure because the police did not have a reasonable suspicion that Long was involved in a criminal activity that would justify the police making an investigatory stop. We disagree.

■ When reviewing a motion to suppress evidence, this court will reverse only if the circuit court's decision is found to be clearly erroneous. *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). We defer to the circuit court's factual findings and credibility determinations and consider the evidence and all reasonable inferences derived from the evidence in the light most favorable to the circuit court's ruling. *Id.* In reviewing the ruling, we consider the information obtained at the suppression hearing and the information introduced at trial. *State v. West,* 58 S.W.3d 563, 567 (Mo.App.2001). "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews de novo." *Sund,* 215 S.W.3d at 723.

■ "The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures." *West,* 58 S.W.3d at 568. Despite the protections of the Fourth Amendment, an officer may conduct "an investigatory stop of a person, in the absence of probable cause, when the officer has a reasonable suspicion the person is engaged in criminal activity." *Id.* "'[T]he police must have a reasonable suspicion that criminal activity is afoot based on specific and articulable facts known to the officer making the stop.'" *Id.* (citation omitted).

■ "The existence of [a] reasonable suspicion is determined objectively." *State v. Woods,* 284 S.W.3d 630, 635 (Mo. App.2009), *cert. denied,* — U.S. —, 130 S.Ct. 1069, — L.Ed.2d — (2010). "The 'individualized suspicion' that will justify the minimally intrusive '*Terry*' stop is present when 'a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.'" *State v. Mack,* 66 S.W.3d 706, 709 (Mo. banc 2002) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A reviewing court must consider the totality of the circumstances, taking into consideration the collective information possessed by all officers connected to the stop. *State v. Goff,* 129 S.W.3d 857, 863 (Mo. banc 2004). "This process allows officers to draw on their own experience and specialized training to make inferences from and

deductions about the cumulative information available to them that might well elude an untrained person." *State v. Hawkins,* 137 S.W.3d 549, 558 (Mo.App.2004) (citation and internal quotation marks omitted). Thus, even if the conduct justifying the stop was ambiguous and susceptible of an innocent explanation, an officer is permitted to detain persons to resolve the ambiguity. *Id.* at 559. The law justifies stopping possibly an innocent person, because the stop is a minimal intrusion, which allows the officers to briefly investigate further. *Id.*

In Long's case, the police had a sufficient reasonable suspicion that Long had engaged in a drug transaction to justify stopping the vehicle for a brief investigation. Jones believed that Long, who was sitting in the driver's seat of a parked car, exchanged something by hand with the person standing outside of the car. The circumstances of this exchange were particularly suspicious. Jones witnessed a person walk from a distance to approach the car. The person and the driver of the parked car spoke briefly before the person stepped away from the vehicle, looked to the left and to the right, and then re-approached the car. Meanwhile, Jones witnessed the driver of the car making movement with his upper body and doing something with his hands. Upon re-approaching the car, the person inserted a cupped hand into the driver's window and pulled his hand out, still cupped, as if he were holding something. The person immediately walked away, while the driver simultaneously drove away. "A hand-to-hand exchange between the defendant and another is a circumstance that, with others, will support a finding of [a] reasonable suspicion." *Id.* at 558.

■■■ Long characterizes these events as all consistent with innocent activity. However, "[a]cts that separately seem innocent may, when combined, give rise to [a] reasonable suspicion." *Woods,* 284 S.W.3d at 635. The determination of a reasonable suspicion " 'allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.' " *Id.* (citation omitted).

Jones testified that he had been a detective specializing in narcotics investigations for more than two years by the time he observed the activity in Long's case. Jones explained that the behavior in this case, particularly the pedestrian's action in backing away and then re-approaching the car, was typical for a drug sale. He said that often a drug dealer will require the buyer to back away from the car to prevent the buyer from seeing where the drugs are concealed or from identifying the quantity of drugs the dealer has. In addition, the glancing to the left and to the right of the person may be considered a furtive gesture checking to see if the buyer was being observed. Indeed, nervousness and evasive and furtive actions on the part of a subject is a permissible component of an articulable suspicion. *Id.* While each individual movement and action may be considered innocent, when put together, they represent a suspicious activity recognized by Jones's training.

Moreover, Long's activity in this case was even more suspicious because it occurred in an area known for its high drug trafficking and crime. " 'What might be considered unremarkable behavior in one particular location and context may be deemed quite unusual in another.' " *Id.* (citation omitted). The fact that the suspicious activity occurred in a high crime area, while not determinative by itself, is " 'among the relevant contextual considerations in a *Terry* analysis.' " *Hawkins,*

137 S.W.3d at 558 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). Thus, the location of the activity coupled with the highly suspicious behavior observed by Jones, which was communicated to Hester and Logan, albeit in conclusory form, was more than sufficient to create a reasonable suspicion of criminal activity to justify the investigatory stop.

Indeed, this court found that the police had a reasonable suspicion to support an investigatory stop under similar circumstances in *State v. Hawkins*, 137 S.W.3d 549 (Mo.App.2004). In *Hawkins*, a police officer was conducting surveillance on two buildings where it was believed that significant drug trafficking took place. *Id.* at 551–52. As the officer watched, the defendant pulled up in a Corvette. *Id.* at 552. A man came out of one of the buildings and walked up to the defendant. *Id.* They engaged in a "hurried action," in which the observing officer believed that the two men passed something between them. *Id.* After the exchange, the defendant left the lot in the Corvette. *Id.* Believing that a narcotics transaction had taken place, the officer stopped the Corvette for further investigation. *Id.* On appeal, this Court found that a reasonable suspicion existed for the stop. *Id.* at 559.

Long attempts to distinguish *Hawkins* by arguing that, unlike his case, the police "actually saw a hand-to-hand exchange of an unknown item." Long, however, overstates the evidence in *Hawkins*. The officer in *Hawkins* testified that he *believed* the defendant had passed something to the other party—he said that the movement "looked like more than a handshake." *Hawkins*, 137 S.W.3d at 552, 558. The officer did not testify that he "actually saw" a hand-to-hand exchange; he said that the two men "appeared to pass something" between them and that he "be-lieved" that a hand-to-hand drug exchange had taken place. *Id.* Long also attempts to distinguish *Hawkins* further by pointing out that, unlike his case, the police officer in *Hawkins* was familiar with the defendant because the defendant had been arrested in the past and had been found in possession of narcotics and a large amount of cash during his last arrest. *Id.* at 558. While Long is correct that the officer's prior familiarity with the defendant in *Hawkins* did provide additional support for this court's finding of a reasonable suspicion in that case, such knowledge is not a necessary prerequisite for a reasonable suspicion. While it is a fact available for consideration, the mere fact that Jones did not know Long prior to the stop does not automatically render his suspicion unreasonable.

Considering the totality of the circumstances in this case, the officers had a reasonable suspicion sufficient to conduct an investigatory stop. The circuit court did not clearly err in denying Long's motion to suppress or in admitting the evidence at trial. We, therefore, affirm the circuit court's judgment.

All concur.