STATE of Missouri, Respondent,

v.

Alejandro FRANCO–AMADOR,
Appellant.

No. WD 59506.

Missouri Court of Appeals,
Western District.

March 5, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 2002.

Application for Transfer Sustained
April 23, 2002.

Case Retransferred Sept. 24, 2002.

Court of Appeals Opinion Readopted
Sept. 26. 2002.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrew W. Hassell, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., SPINDEN, C.J., and ELLIS, J.

HAROLD L. LOWENSTEIN, Judge.

Appellant, Alejandro Franco–Amador, appeals from his conviction and sentence, following a jury trial, for second degree drug trafficking, § 195.223, RSMo 2000.[1] Amador was sentenced to ten years' imprisonment. Because this court finds there was insufficient evidence to prove the defendant constructively possessed methamphetamine, the judgment of the trial court is reversed.

### Factual and Procedural History

The facts are viewed in the light most favorable to the verdict. *State v. Young,* 42 S.W.3d 729, 733 (Mo.App.2001). Alejandro is from Mexico, his entry and stay in the United States are illegal. He worked in various places and was living in Phoenix, Arizona, when his brother, who lived in Atlanta, Georgia, told him he could find construction work in Atlanta. Alejandro (hereafter Alejandro or the defendant) decided to look for a ride to Atlanta.

While in Phoenix, Alejandro met Jose Efrain Amador[2] in a convenience store. Alejandro told Jose that he wanted to go to Atlanta and Jose offered him a ride. Alejandro agreed to pay Jose $400 for the ride to Atlanta but Jose told him if he did some of the driving Jose would charge him only $200 or $300. Alejandro only had approximately $35, however, so Jose told him he could pay him after he worked and earned some money.

On March 30, 2000, the defendant, Alejandro, was driving Jose's car on highway I 70 in Callaway County. Corporal Rex Scism was just completing a traffic stop when he saw Jose's car change lanes without signaling. Corporal Scism turned his lights and siren on and stopped the vehicle.

When Corporal Scism approached the driver's window of the car, he smelled a strong odor of air freshener and spices. Corporal Scism also noticed that Alejandro and Jose both seemed extremely nervous. Corporal Scism asked Alejandro to step out of the vehicle and asked him for his driver's license. Alejandro showed Corporal Scism an Oregon identification card. Alejandro had very limited English, but was able to tell Corporal Scism that he was coming from Kansas and going to Georgia. He also told Corporal Scism that Jose owned the car. Corporal Scism gave Alejandro a warning for changing lanes without signaling.

Based upon the nervousness of Alejandro and Jose, and the strong odor of air freshener and spices, Corporal Scism asked Jose for consent to search his vehicle. Jose consented to the search. Scism searched the trunk of the car. When he pulled out the fabric that lines the inner

---

1. All statutory references are to the Revised Missouri Statutes 2000, unless otherwise indicated.

2. The two men are not related.

fenders within the trunk, he found a large amount of pepper, approximately one to two inches deep, poured into the rear fenders. Corporal Scism also found a roll of duct tape on the front passenger seat floorboard. When he went to search the back seat area of the car, he noticed that a portion of the backrest was not flush against the trim and it looked as if it had been tampered with. Corporal Scism removed the back seat cushion and found more pepper poured under the cushions. He also found three bundles of drugs wrapped in duct tape and encased in white plastic bags with more spices and pepper. The bundles contained a total of 1,113.08 grams of methamphetamine.

After Corporal Scism discovered the bundles of methamphetamine, he drew his gun and ordered Alejandro and Jose to lie on the ground, as he walked backwards towards his patrol car to retrieve a second set of handcuffs. As Corporal Scism began to back up, Alejandro and Jose both stood up and ran in different directions. Alejandro ran across all four lanes of the highway and Jose started running up a hill along the highway. Corporal Scism began to chase Jose and then decided he should not leave both of the cars and the contraband unsecure. Instead, Corporal Scism called for backup and a manhunt ensued. Alejandro was arrested the next morning at a convenience store near Kingdom City. After a jury trial, Alejandro was convicted of second degree drug trafficking, § 195.223, and sentenced to ten years' imprisonment. Alejandro appeals.

## I.

Alejandro argues in his sole point on appeal that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in entering a judgment of guilty for second degree drug trafficking in that there was insuffi-

cient evidence to establish beyond a reasonable doubt that Alejandro possessed a controlled substance.

In considering a challenge to the sufficiency of the evidence, this court accepts as true all evidence and its inferences in a light most favorable to the verdict, and rejects all contrary evidence and inferences. *State v. Goddard*, 34 S.W.3d 436, 438 (Mo.App.2000) (citing *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993)). " 'The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence.' " *State v. Agee*, 37 S.W.3d 834, 836 (Mo.App.2001) (quoting *State v. Dawson*, 985 S.W.2d 941, 946 (Mo. App.1999)). This court is charged with the responsibility of determining whether all of the evidence, direct and circumstantial, is sufficient to provide any rational juror with proof beyond a reasonable doubt of each of the elements of the crime charged. *State v. Butler*, 24 S.W.3d 21, 48 (Mo.App. 2000).

Alejandro was charged with second-degree drug trafficking under § 195.223.9(3) which states:

9. A person commits the crime of trafficking drugs in the second degree if, except as authorized by sections 195.005 to 195.425, he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than thirty grams of any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: amphetamine, its salts, optical isomers and salts of its optical isomers; methamphetamine, its salts, isomers and salts of its isomers; phenmetrazine and its salts; or methylphenidate. Violations of this subsection or attempts to violate this subsection shall be punished as follows:

(3) If the quantity involved is four hundred fifty grams or more, the person shall be guilty of a class A felony and the term of imprisonment shall be served without probation or parole.

The element of second degree drug trafficking at issue in this case is possession. Section 195.010(32) defines "possessed" or "possessing a controlled substance" as follows:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

■ "Where there is joint possession, the state 'must prove additional circumstances to inculpate the accused.' " *State v. Fox*, 882 S.W.2d 214, 217 (Mo.App.1994). "The rule which requires that an inculpation in addition to joint use of premises be shown for a submissible issue of constructive possession shows judicial wariness that guilt on circumstantial evidence be imputed only on substantial proof." *State v. Perkins*, 996 S.W.2d 753, 758 (Mo.App. 1999). There must be more evidence than just defendant's presence to connect him with the controlled substance. *State v. Yarber*, 5 S.W.3d 592, 594 (Mo.App.1999).

The State argues that Alejandro's constructive possession of the methamphetamine was shown by his nervousness, his flight from the scene, the roll of duct tape found on the front passenger seat floorboard, and the use of pepper and air fresheners as masking agents.

### A. Nervousness

■ When Corporal Scism approached the vehicle he noticed that Alejandro and Jose seemed extremely nervous. Corporal Scism testified that while it is not unusual for people to appear nervous when they are initially pulled over, their anxiety level usually diminishes as the encounter goes on. In this situation, however, he claims that Alejandro's and Jose's anxiety levels increased as the stop continued. "Visible nervousness is probative of defendant's awareness of the controlled substance." *State v. Mishler*, 908 S.W.2d 888, 892 (Mo.App.1995). While visible nervousness by itself is not sufficient evidence from which reasonable jurors could find a defendant guilty, it is one incriminating fact which will support a conviction if consistent with the totality of the circumstances. *State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996). It could also be inferred from the circumstances that Alejandro was nervous at being pulled over because he was an illegal alien.

### B. Flight from scene

After Corporal Scism discovered the bundles of methamphetamine behind the backseat of the car, he drew his gun and ordered Alejandro and Jose to lie on the ground. As Corporal Scism began to walk backwards towards his patrol car to retrieve a second set of handcuffs, Alejandro and Jose both stood up and ran in different directions. Alejandro ran across all four lanes of the highway and Jose started running up a hill along the highway.

■ "A defendant's flight is admissible as tending to demonstrate a consciousness of guilt." *State v. Jackson*, 925 S.W.2d 856, 865 (Mo.App.1996). "Flight

does not establish a defendant's guilty knowledge of a particular crime in comparison to other possible charges and is alone insufficient to support a conviction." *State v. Schwartz*, 899 S.W.2d 140, 144–45 (Mo. App.1995). (citations omitted). Along with other evidence of guilt, flight can be considered in support of a conviction. *Id.*

### C. Duct tape

When Corporal Scism searched the car he found a roll of duct tape and some food wrappers and drink containers on the front floorboard on the passenger side. The methamphetamine he later found behind the backseat of the car was wrapped in duct tape. While duct tape is known to be used to wrap drugs, *State v. Melville*, 864 S.W.2d 452, 456 (Mo.App.1993) (marijuana found in luggage wrapped in gray duct tape); *State v. Gasperino*, 859 S.W.2d 719, 720 (Mo.App.1993) (thirty-two pound bale of marijuana found wrapped in cellophane and duct tape), it also has a number of legitimate, legal uses.

### D. Odors in vehicle

When Corporal Scism approached the driver's window of the car, he smelled a strong odor of air freshener and spices. The State cites *State v. Mercado*, 887 S.W.2d 688, 691 (Mo.App.1994), for the proposition that discernible odors, either emitted by marijuana or something used to mask an otherwise pungent smell would be evidence of possession of drugs. In *Mercado*, however, the court merely stated that there was no discernible odor of marijuana or a masking agent in the vehicle and ultimately found that there was no evidence to connect the defendant to the drugs other than the fact that he was a passenger in the vehicle. *Id.* at 692. *Mercado* does cite to *State v. Fuente*, 871 S.W.2d 438 (Mo. banc 1994), and *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992), in which a strong odor of marijuana coming from the defendants' vehicle was determined to be evidence of possession. In this case, however, the smell coming from the vehicle was not the smell of the drug itself, but rather pepper and air freshener.

█ Considering the totality of these circumstances together: nervousness, flight, duct tape and masking odors, this court cannot say that this evidence was sufficient to find that Alejandro constructively possessed the methamphetamine because it did not prove that Alejandro had the power and the intention to exercise dominion or control over the methamphetamine. In fact, the evidence showed that Alejandro did not own the car, had met Jose for the first time at the convenience store when Jose offered him a ride, and had never been in Jose's vehicle prior to when it was stopped. *See State v. Ray*, 747 S.W.2d 765, 766 (Mo.App.1988) (constructive possession of cocaine could not be found where there was no evidence the defendant owned the vehicle, rode in it on a frequent basis, or even that he had been in the car prior to when it was stopped). Further, Alejandro's nervousness and flight could have been attributed to his status as an illegal alien. These factors alone, without any other evidence or reasonable inference of the defendant's constructive possession of the contraband, will not form the basis of a criminal judgment. A verdict based upon suspicion will not be permitted to stand. *State v. Hardy*, 326 Mo. 969, 34 S.W.2d 102, 103 (1930). The judgment of the trial court is reversed.

All concur.