**STATE of Missouri, Respondent,**

v.

**Lisa A. SHINKLE, Appellant.**

**No. WD 71508.**

Missouri Court of Appeals,
Western District.

April 26, 2011.

Geoffery E. Willlmoth, Kansas City, MO, for appellant.

Jonathan D. McQuilkin, Columbia, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, C.J., PRESIDING, GARY D. WITT, J., and HADLEY GRIMM, SP. J.

LISA WHITE HARDWICK, Chief Judge.

A jury convicted Lisa Shinkle on two counts of receiving stolen property in violation of Section 570.080. On appeal, Shinkle contends the circuit court erred in entering judgment on the convictions because: (1) the evidence was insufficient to prove that she knew the property at issue was stolen; and (2) the two convictions subjected her to multiple punishments for a single act of receiving stolen property and thereby violated her constitutional right to be free from double jeopardy. For reasons explained herein, we find no error and affirm the convictions.

## FACTUAL AND PROCEDURAL HISTORY

Dana Savorelli owned an animal sanctuary in Greenwood, Missouri, where he kept several species of monkeys and other exotic animals. On October 7, 2007, Savorelli

returned from an out-of-town trip and discovered that three monkeys [1]—known as Nicholas, Abby, and Melissa—were missing from their cages. After reviewing a surveillance tape, Savorelli determined that Catherine Montes, a frequent volunteer at the animal sanctuary, had tranquilized and removed the three monkeys at approximately 8:00 p.m. on October 6, 2007. Savorelli took a copy of the surveillance tape to the police and reported that the monkeys had been stolen.

The police investigated the incident but were unable to locate the monkeys. In March 2008, Savorelli received an anonymous letter suggesting that the missing monkeys might be found at 13500 S.E. 95th Road in Agency, Missouri. Savorelli knew that Lisa Shinkle lived in Agency, Missouri. He had previously given Shinkle a pig-tailed macaque and was aware that Shinkle owned a rhesus monkey. Savorelli also had received information from Tammy Parks, a volunteer at the animal sanctuary, about a conversation between Shinkle and Montes that occurred sometime after the monkeys were stolen. Savorelli and Parks were attending a hearing, at the Jackson County Courthouse, regarding the missing monkeys when they saw Shinkle and Montes together. Parks overheard Shinkle say to Montes, "Cathy, it's okay. I have 'no trespassing' signs. The monkeys will be safe."

Savorelli gave the anonymous letter to the Buchanan County Sheriff's Department for further investigation. Parks also told the investigators about the conversation she heard between Shinkle and Montes at the courthouse. The Sheriff's Department obtained a warrant to search Shinkle's property in Agency.

Detective Thomas Cates and Sergeant Mark Brock served the warrant on March 14, 2008. Shinkle met the officers at the closed gate to her property and refused to open it. Brock read the search warrant to Shinkle. Shinkle admitted that she knew of the monkeys referred to in the warrant and that she had attended a court hearing with Montes regarding the missing primates. Shinkle told Brock that even if she knew where the monkeys were, she wouldn't tell him. She became argumentative and combative. The officers eventually had to handcuff Shinkle and cut open the chain link gate in order to search the property. Inside Shinkle's house, they found a male pigtail macaque and a male rhesus macaque, neither of which fit the description of the three missing monkeys.

Six months later, the officers received information that Shinkle had four primates at her residence. The officers obtained a new search warrant and met Shinkle outside her home on September 18, 2008. Shinkle told the officers she had two additional macaques that she was "baby-sitting" for the owner who lived in Maryland. She presented documentation for the two monkeys, whom she identified as Booboo, a male, and Precious, a female. The officers attempted to scan the two monkeys for identification microchips, but could not complete the process because the monkeys became too aggressive and uncooperative.

Shinkle then offered to telephone Betty Tregunna, the alleged owner of the monkeys in Maryland, so that the officers could confirm the baby-sitting arrangement. Shinkle made the call to Tregunna and handed the telephone to Detective Cates. Tregunna identified herself and sounded nervous. Cates asked whether she owned two monkeys named Booboo

---

**1.** All three of the monkeys were macaques, a breed very similar to but slightly smaller than baboons.

and Precious. Tregunna "went back and forth" as to whether she or her son owned the monkeys. She was unable to answer Cates' questions regarding the age of the monkeys or how long she had owned them. Tregunna told Cates the phone line was bad and hung up without providing any additional information.

After the phone call, the officers were able to successfully scan the male monkey, whose microchip indicated that he had been purchased by Savorelli. Sergeant Brock contacted Savorelli, who immediately came to Shinkle's residence along with Parks to view the male and female monkeys. Savorelli and Parks recognized and identified the two monkeys as Nicholas and Abby.[2]

Tregunna called Sergeant Brock the next day and admitted that she had lied during the telephone call initiated by Shinkle. Tregunna told Brock that she never owned the monkeys and that Montes had given her a storyline to use if anyone contacted her about the missing monkeys. Tregunna also said she had never spoken with Shinkle about baby-sitting the monkeys.

Shinkle was charged by felony information with two counts of receiving stolen property. Following trial, the jury found her guilty on both counts. The circuit court sentenced Shinkle to one year in the county jail but suspended execution of the sentence and placed her on probation for three years. Shinkle appeals.

## ANALYSIS

### *Sufficiency of the Evidence*

■ In Point I, Shinkle contends the circuit court erred in entering judgment on the convictions for receiving stolen property because the evidence was insufficient to prove that she "knew or believed" that the two monkeys had been stolen. Our review of this issue is limited to a determination of whether there is sufficient evidence from which a reasonable jury could find Shinkle guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). In determining the sufficiency of the evidence, we accept as true all evidence and inferences favorable to the State, while disregarding all contrary evidence and inferences. *Id.*

■ Section 570.080[3] provides that "[a] person commits the commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he or she receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." Because direct evidence of whether the defendant knew or believed the property was stolen is seldom available, circumstantial evidence is sufficient to prove this element of the offense. *State v. Langdon*, 110 S.W.3d 807, 813 (Mo. banc 2003). Evidence of unexplained possession of recently stolen property is a circumstance the jury is entitled to consider in assessing the defendant's knowledge or belief. *Id.* Suspicious conduct and deceptive behavior can further support an inference that the defendant knowingly possessed stolen property. *State v. Winder*, 50 S.W.3d 395, 403 (Mo.App.2001).

The State presented evidence that Shinkle knew about the missing monkeys before the monkeys were discovered on her property in September 2008. Shinkle attended a Jackson County Circuit Court hearing with Catherine Montes shortly af-

2. The third missing monkey, Melissa, was never recovered.

3. All statutory citations are to the Revised Missouri Statutes 2000, as updated by the Cumulative Supplement 2009.

ter a surveillance tape showed Montes taking the monkeys from the animal sanctuary in October 2007. At the courthouse, Tammy Parks, a volunteer at the animal sanctuary, overheard Shinkle tell Montes that the monkeys would be safe because Shinkle's property has "No Trespassing" signs. This conversation indicated a joint effort by Shinkle and Montes to conceal the stolen property.

The State also presented evidence that Shinkle was evasive and uncooperative during the investigation of the missing monkeys. When Detective Cates and Sergeant Brock served the initial search warrant on Shinkle's property in March 2008, Shinkle told the officers she was familiar with the monkeys described in the warrant. Shinkle refused to open the gate to her property despite the search warrant. She told Brock that even if she knew where the monkeys were located, she wouldn't tell him. The officers eventually had to break open the gate and handcuff Shinkle in order to search the property.

When the officers located two of the missing monkeys while executing a second warrant to search Shinkle's property in September 2008, Shinkle lied about how she had acquired the monkeys. She told the officers she was baby-sitting the monkeys for their owner, Betty Tregunna, who lived in Maryland. Tregunna initially confirmed Shinkle's account but subsequently told officers the story was a ruse concocted by Montes. Shinkle's false explanation indicated her consciousness of guilt and her knowledge that the monkeys she harbored were, in fact, the stolen monkeys. *State v.*

*Perry,* 275 S.W.3d 237, 249 (Mo. banc 2009)

■ Conduct and declarations designed to conceal an offense are admissible because they tend to establish the defendant's guilt for the charged crime. *Id.* Here, Shinkle's possession of the monkeys, her relationship with Montes, her lack of cooperation with law enforcement, and her deceptive behavior provided sufficient circumstantial evidence from which a jury could infer that she knew or had reason to believe the monkeys were stolen property. The point on appeal is denied.

### Double Jeopardy

In Point II, Shinkle contends the circuit court plainly erred in accepting the jury's guilty verdict on two counts of receiving stolen property because the convictions violated her right to be free from double jeopardy. She argues the State proved no more than a single act of "receiving" stolen property because there was no evidence that she received the two monkeys at different times. Shinkle asserts the two convictions subjected her to multiple punishment for a single offense, and, therefore, one of the convictions must be reversed on grounds of double jeopardy.

■ Shinkle seeks plain error review because her counsel did not raise this double jeopardy objection at trial. Whether preserved or not, the appellate court has discretion to review "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.[4]

---

4. The State argues that Shinkle cannot seek plain error review because constitutional issues, such as double jeopardy, must be raised "at the earliest opportunity, and [the defendant's] failure to do so preserves nothing for appellate review." *State v. Johnson,* 245 S.W.3d 288, 293 (Mo.App.2008) (*quoting State*

*v. Elliott,* 987 S.W.2d 418, 420 (Mo.App. 1999)). We disagree. Our court has recognized that a defendant who "failed to raise a double jeopardy argument until his appeal may nevertheless request plain error review of such a claim." *State v. Horton,* 325 S.W.3d 474, 477 (Mo.App.2010); *see also State v.*

Plain error review is a two-step process. *State v. Horton*, 325 S.W.3d 474, 477 (Mo.App.2010). First, we look to whether the trial court committed an obvious error which affected Shinkle's substantial rights. *Id.* Then, if we find such error, we determine whether the error resulted in a manifest injustice or miscarriage of justice. *Id.*

The State charged Shinkle with two separate counts of receiving stolen property: one for the male monkey, Nicholas, and one for the female monkey, Abby. To prove these charges under Section 570.080, the State was required to show that Shinkle received each monkey with the knowledge that it had been stolen and for the purpose of depriving the owner, Dana Savorelli, of his lawful interest in the property. Shinkle contends the State also had to allege and prove that she received the monkeys on separate occasions in order to satisfy its burden of proof on the two separate counts. We note, however, that whether there was a single or multiple reception of stolen property is not an element of the offense under Section 570.080. *State v. Gardner*, 741 S.W.2d 1, 6 (Mo.

banc 1987) (failure to allege separate times when stolen property was received does not invalidate convictions because "time was not an element of the offense"). Thus, the State had no statutory burden to prove that Shinkle received the two monkeys at separate times.[5]

The issue of whether the defendant received multiple items of stolen property on one or more occasions is relevant only in determining whether the defendant's double jeopardy rights were violated. *See Gardner*, 741 S.W.2d at 4–5. The Fifth Amendment prohibition against double jeopardy protects defendants from multiple punishments or prosecutions for the same offense. *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998). Multiple convictions can survive scrutiny under the double jeopardy clause "if the defendant has in law and in fact committed separate crimes." *Id.*

The constitutional protection from double jeopardy is a personal right that must be affirmatively pleaded by the defendant at the time of trial or will be regarded as waived. *Horsey v. State*, 747

*Polson*, 145 S.W.3d 881, 891 (Mo.App.2004). Notably, the State recently conceded the availability of plain error review in a similar case involving a double jeopardy claim. *State v. Tremaine*, 315 S.W.3d 769, 776 n. 6 (Mo. App.2010).

The review permitted under Rule 30.20 is discretionary for "plain errors affecting substantial rights" regardless of whether such error is preserved. Contrary to the State's argument, the availability of such review for a constitutional claim is not solely contingent upon whether the plain error affected the trial court's subject matter jurisdiction, but whether it affected the defendant's substantial rights and caused manifest injustice. *See e.g. Horton*, 325 S.W.3d at 477.

5. We previously held In *State v. Davison*, 46 S.W.3d 68, 77 (Mo.App.2001), that the State must affirmatively prove multiple violations of

Section 570.080 by adducing evidence that the stolen property was received on separate and unconnected occasions. This holding was premised on the view that double jeopardy violations are jurisdictional because they go "to the very power of the state to bring the defendant in the court to answer the charge brought against him[.]" *Id.* at n. 4 (*quoting Hagan v. State*, 836 S.W.2d 459, 461 (Mo. banc 1992)). The Supreme Court subsequently altered this view in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. banc 2009), by finding that Missouri recognizes only two types of jurisdiction: personal jurisdiction and subject matter jurisdiction. In light of *Webb*, double jeopardy claims can no longer be considered jurisdictional because they do not affect the trial court's exercise of personal or subject matter jurisdiction. Thus, *Davison*'s description of the State's burden of proof under Section 570.080 is no longer valid post-*Webb*.

S.W.2d 748, 754–55 (Mo.App.1988). "Because double jeopardy is an affirmative defense, it is the defendant's burden to prove that double jeopardy applies." *State v. Mullenix,* 73 S.W.3d 32, 34 (Mo.App. 2002).

Shinkle admits that she did not plead or raise the affirmative defense of double jeopardy in the circuit court. She therefore "cannot fairly complain that the state should have offered more evidence against an affirmative defense [she] never raised." *State v. Tipton,* 314 S.W.3d 378, 380 (Mo.App.2010). Unless the issue is invoked by the defendant, the State has no "burden of proof or other evidentiary obligation" to disprove the possibility of double jeopardy. *Id.* Shinkle waived any claim of double jeopardy by failing to put the State on notice of the defense and the need to present evidence that the stolen items were received on separate occasions.

We find no plain error or manifest injustice in the circuit court's entry of judgment on the convictions for two counts of receiving stolen property. The State proved the violations of Section 570.080 in the Count I and Count II allegations by presenting evidence that Shinkle received a male and female monkey with the knowledge that the monkeys had been stolen and for the purpose of depriving Savorelli of his ownership interest in the monkeys. Because Shinkle did not assert the defense of double jeopardy, the State had no obligation to present further evidence to refute that constitutional claim. Point II is denied.

## CONCLUSION

We affirm the judgment of convictions.

All Concur.