STATE of Missouri, Respondent,

v.

William A.L. CRABTREE, Appellant.

No. WD 74414.

Missouri Court of Appeals,
Western District.

April 30, 2013.

Chris Koster, Attorney General, Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

Rosalynn Koch, Assistant Public Defender, Columbia, MO, for Appellant.

Before Division Two: ALOK AHUJA, Presiding Judge, and LISA WHITE HARDWICK and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

William Crabtree appeals his conviction, following a bench trial, of resisting a lawful detention or stop, pursuant to section 575.150.[1] Crabtree argues that, at the time

---

1. All statutory references are to RSMo Cum. Supp.2009, unless otherwise noted.

the officer first attempted to stop him, the officer had no reasonable suspicion for doing so, and the attempted stop was thereby rendered unlawful. Thus, he argues, the evidence supporting his conviction was insufficient. We affirm.

## Factual Background

On April 5, 2011, around 1:45 p.m., Deputy Worthington of the Cole County Sheriff's Department was driving on the 5000 block of Route C when he observed a first responder vehicle in the oncoming lane of traffic flash its lights at him. Deputy Worthington slowed down to see why the first responder was trying to get his attention, and, as Deputy Worthington passed the first responder's vehicle, the driver pointed to the car behind him. Deputy Worthington looked at the car behind the first responder and recognized it as Crabtree's car. He then looked at the driver and recognized him as Crabtree.

Deputy Worthington turned his car around to follow Crabtree in order to "find out what was going on" and to see "what the first responder wanted." Once Deputy Worthington began to catch up to Crabtree's vehicle, Crabtree accelerated and began traveling into oncoming traffic to pass the cars in front of him. Although Deputy Worthington was not contemplating arresting Crabtree when he turned around to follow Crabtree, when Crabtree sped away, the deputy turned on his lights and siren and pursued Crabtree's vehicle.

Crabtree continued to accelerate, reaching speeds over eighty miles per hour. Crabtree passed a vehicle on a blind curve and lost control of his own vehicle twice, but was able to continue driving. After Crabtree entered onto a gravel road, Deputy Worthington stopped the pursuit due to his inability to safely maintain the high rate of speed required to keep up with Crabtree. After losing sight of Crabtree, Deputy Worthington began searching the area. Deputy Worthington's search yielded no results, so he charged Crabtree with resisting arrest by fleeing, careless and imprudent driving, failure to maintain right half of the roadway, failure to signal a turn, and passing while on a hill or curve when vision is obstructed. He then forwarded a warrant application and probable cause statement to the prosecuting attorney.

Crabtree was subsequently charged with the class D felony of resisting a lawful stop or detention, in violation of section 575.150. The case was court-tried on stipulated facts, consisting of Deputy Worthington's field report and preliminary hearing testimony. The court found Crabtree guilty and sentenced him to three years' imprisonment. Crabtree appeals.

## Standard of Review

" 'The standard of review for a challenge to the sufficiency of the evidence is the same in both court-tried and jury-tried cases.' " *State v. Younger*, 386 S.W.3d 848, 851 (Mo.App. W.D.2012) (quoting *State v. Almaguer*, 347 S.W.3d 636, 639 (Mo.App. E.D.2011)). "We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard all contrary evidence and inferences." *Id.* "We then assess whether the favorable evidence and inferences therefrom are sufficient for a reasonable factfinder to find each of the essential elements of the offense beyond a reasonable doubt." *Id.* at 852.

## Analysis

■ Crabtree raises a single point on appeal: he argues that the evidence was insufficient to support his conviction. Crabtree claims that Deputy Worthington lacked reasonable suspicion to stop him and, therefore, that the evidence did not

demonstrate that he resisted a *lawful* stop or detention, as required by section 575.150.1. We disagree.

Section 575.150 provides in pertinent part:

1. A person commits the crime of resisting ... detention, or stop if, knowing that a law enforcement officer is ... attempting to lawfully detain or stop an individual or vehicle, ... for the purpose of preventing the officer from effecting the ... stop or detention, the person:

    (1) Resists the ... stop or detention of such person by ... fleeing from such officer ....

    ....

3. A person is presumed to be fleeing a vehicle stop if that person continues to operate a motor vehicle after that person has seen or should have seen clearly visible emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursuing that person.

4. It is no defense to a prosecution pursuant to subsection 1 of this section that the law enforcement officer was acting unlawfully in making the arrest....

5. ... Resisting an arrest, detention or stop by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony....

Crabtree does not contest the facts that Deputy Worthington was attempting to stop him, that he knew of Deputy Wor-thington's intent, or that he fled in a manner that created a substantial risk of serious physical injury or death. Crabtree's only challenge in this appeal is to the lawfulness of the attempted stop.

Crabtree argues that section 575.150.4, which provides that "[i]t is no defense to a prosecution pursuant to subsection 1 of this section that the law enforcement officer was acting unlawfully in making the arrest," is limited to arrests only, and that, unlike arrests, a person is entitled to resist an unlawful stop or detention. The Eastern District of this Court has issued two recent decisions that seem somewhat contrary to Crabtree's argument insofar as they apply section 575.150.4 to cases involving stops, rather than arrests, without directly addressing whether a stop or detention must be *lawful* to preclude resistance under the statute. *See State v. Ritchie*, 376 S.W.3d 58, 63–64 (Mo.App. E.D. 2012); *State v. Williams*, 303 S.W.3d 634, 636 (Mo.App. E.D.2010); *see also* 32 Robert H. Dierker, Mo. Practice § 47.4 (2d ed. Supp.2012) (noting that the opinion in *Williams* "is somewhat fuzzy on whether the State must establish that the stop or detention is otherwise 'lawful,' and implies that almost any detention is subject to the statute").

Regardless of whether the statute covers unlawful stops or detentions—an issue we need not and do not decide here—the attempted stop in this case was based upon reasonable suspicion.[2] Deputy Wor-thington's attempted stop commenced, at the earliest, when he activated his emergency lights and siren. At that time, he

---

2. The State opted to charge Crabtree with resisting a lawful stop, rather than resisting arrest. Accordingly, at trial, the State argued that there was sufficient evidence of reasonable suspicion to support the lawfulness of the attempted stop. Had the State, instead, opted to charge him with resisting arrest, we would find that the record supported probable cause to arrest as well, in light of Crabtree's conduct of speeding and traveling into oncoming traffic while passing cars just prior to Deputy Worthington initiating his lights and siren.

had reasonable suspicion to justify an investigatory stop.

██ "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Id.* at 123–24, 120 S.Ct. 673 (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

██ "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id.* at 124, 120 S.Ct. 673. "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* "Even where the conduct articulated as justification for the stop is ambiguous and susceptible of an innocent explanation, if it also suggests criminal activity, then detention to resolve the ambiguity does not violate the Fourth Amendment." *State v. Kelly*, 119 S.W.3d 587, 595 (Mo.App. E.D.2003).

Here, upon seeing Deputy Worthington, Crabtree embarked upon a course of unprovoked flight from the deputy, and he did so in such a manner as to create "a substantial risk of serious physical injury or death...." § 575.150.5. The reasonable inference from the evidence is that Deputy Worthington did not attempt to stop or detain Crabtree until Crabtree sped away from the officer, at which point the officer turned on his lights and sirens and initiated pursuit. Crabtree's flight, in addition to the fact that the first responder had indicated that something was amiss with Crabtree's vehicle, was sufficient to constitute reasonable suspicion justifying Deputy Worthington's attempted stop.

Crabtree, relying on *State v. Moses*, 265 S.W.3d 863, 866 (Mo.App. E.D.2008), and *State v. Franco–Amador*, 83 S.W.3d 555, 558–59 (Mo.App. W.D.2002), argues that, while "[f]light can be probative of guilt, ... a conviction cannot rest on flight alone." But, in making this argument, Crabtree ignores the fact that, unlike the crimes at issue in *Moses* and *Franco–Amador*, flight is an element of resisting a lawful stop or detention under section 575.150.1(1).[3] Furthermore, Crabtree's conviction is not based on flight alone; it is also based upon the other elements of resisting a lawful stop or detention that Crabtree has not challenged. And finally, in both *Moses* and *Franco–Amador*, the State was using evidence of flight to demonstrate the defendants' consciousness of guilt for the purpose of proving their guilt of the charged crimes *beyond a reasonable doubt*. *Moses*, 265 S.W.3d at 866; *Franco–Amador*, 83 S.W.3d at 558. Here, Crabtree's flight is relevant to establish mere reasonable suspicion, a standard far lower than beyond a reasonable doubt. Thus, we find *Moses* and *Franco–Amador* inapposite.

Point denied.

---

**3.** In *Moses*, the defendant was convicted of cocaine possession in violation of section 195.202, and, in *Franco–Amador*, the defendant was convicted of second-degree drug trafficking in violation of section 195.223. *Moses*, 265 S.W.3d at 865; *Franco–Amador*, 83 S.W.3d at 556.

## Conclusion

The evidence was sufficient to establish that Crabtree fled from Deputy Worthington's attempted lawful stop in a manner that created a substantial risk of serious physical injury or death to others. Thus, his conviction and sentence for the class D felony of resisting a lawful stop or detention is affirmed.

ALOK AHUJA, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.