**STATE of Missouri, Respondent,**

**v.**

**Roberto MALDONADO–ECHEVERRIA,
Appellant.**

**No. WD 74860.**

Missouri Court of Appeals,
Western District.

April 30, 2013.

Dora Fichter, Jefferson City, for respondent.

Mark D. Hagen, for appellant.

Before Division One: JAMES E. WELSH, Chief Judge, VICTOR C. HOWARD, Judge and PEGGY STEVENS McGRAW, Special Judge.

VICTOR C. HOWARD, Judge.

Roberto Maldonado–Echieverra appeals his conviction and twenty-five year sentence for second degree drug trafficking, section 195.223, RSMo Cum.Supp.2009. He claims that his conviction was not supported by sufficient evidence. The judgment of conviction is reversed.

## Facts

On July 16, 2010, the Missouri Highway Patrol conducted a ruse drug checkpoint at the Route EE and K Highway interchange along I–70 in Saline County. I–70 is a "recognized drug courier route or drug corridor." The Highway Patrol placed signs before the interchange indicating a drug checkpoint ahead. The interchange is a no services exit, meaning there were no gas stations, restaurants, or other services for the public.

Sergeant Robert McGinnis monitored the interchange for vehicles that appeared to be avoiding the checkpoint by leaving the highway. He observed a black 2001 Nissan Frontier truck exit I–70 at the interchange. Sergeant McGinnis followed the truck as it traveled north on Route EE and then turned east on Route 20 into the city limits of Marshall. The speed limit reduced to forty-five miles per hour from sixty miles per hour. The truck, however, did not slow down, and the sergeant clocked the truck at fifty-two miles an hour. Sergeant McGinnis activated his emergency lights and stopped the truck.

Sergeant McGinnis approached the truck and advised the driver of the reason for the stop. The driver stated that he did not realize the speed limit had dropped and apologized several times for speeding. The sergeant asked the driver for his license, registration, and proof of insurance. He also asked the passenger for identification. Sergeant McGinnis noticed that both men were staring straight ahead and neither would look at him. The passenger kept yawning and appeared nervous. Sergeant McGinnis also noticed a strong odor of air freshener, which sometimes indicates a masking agent used to cover the odor of contraband. The driver provided a driver's license from Sonora, Mexico, identifying him as Luis Torres. The passenger provided a Mexico consulate card that identified him as Roberto Maldonado–Echieverra.[1] Torres told the sergeant that he borrowed the truck from his friend, Mardonio, who stayed in Kansas City. Sergeant McGinnis then asked Torres to accompany him to his patrol car.

Torres told the sergeant that he and Maldonado were going to a nearby city to pick up a truck to take back to Kansas City to work on the engine. Sergeant McGinnis asked Torres which city he was going to and whom he was going to see. Torres began mumbling and eventually stated that he was going to Marshall but did not identify the person he was going to see. Sergeant McGinnis asked Torres how long he had known Maldonado and if Maldonado was a mechanic. Torres replied that he had known Maldonado for a year and that he was not a mechanic. Sergeant McGinnis learned from a computer check that Maldonado's driver's license was suspended. Finding it odd that the two men were going to pick up another vehicle when Maldonado could not drive it with a suspended license, Sergeant McGinnis told Torres what he had learned. Torres stated that Maldonado "was just along for the ride" and was not going to be driving a truck back. The sergeant noticed that while Torres was in the patrol car, he avoided eye contact, looked out the window, and hesitated when answering simple questions. Because of the information he had learned and Torres's answers and demeanor, Sergeant McGinnis became suspicious of both men and asked Torres if he or his passenger possessed anything illegal, including drugs. Torres replied, "No, you can check." To clarify, Sergeant McGinnis asked for permission to search the vehicle, and Torres gave him permission.

Sergeant McGinnis then walked to the truck and told Maldonado that the computer check revealed an active warrant for his arrest. Maldonado acknowledged the warrant and said that he was going to take care of it soon. The sergeant asked Maldonado where the men were going, and Maldonado replied that they were going to Sedalia to visit Torres's friends. Maldonado did not know the names of Torres's friends. Maldonado stated that Torres called him and asked him if he wanted to go to Sedalia and that he said yes. Maldonado also told the sergeant that he had known Torres for two or three months.

Sergeant McGinnis again contacted Torres and told him Maldonado had given a different story about their destination. Torres responded that he had not told Maldonado about picking up a truck in Marshall. Sergeant McGinnis then searched the truck. He found a GPS device mounted on the windshield in front of the passenger that listed several addresses

---

1. For purposes of brevity, Appellant will be referred to as Maldonado in this opinion. No disrespect is intended.

including a Sedalia address. In the back of the truck, Sergeant McGinnis noticed that one section of a plastic bed liner insert on the left, rear corner behind the driver's side was outside the lip of the bed where it was supposed to be pushed back. He pulled the section back and found what was later determined to be four hundred thirty-eight grams of methamphetamine valued at approximately $43,000. The sergeant also seized multiple receipts in the passenger door, both men's cell phones, and a laptop computer. Torres's cell phone had no contact information for Maldonado or recent calls or messages from him. Maldonado's cell phone did not have any contact information for Torres or recent calls or messages from him.

Maldonado was arrested and charged with drug trafficking in the first degree. A bench trial was conducted in October 2011. Sergeant McGinnis testified for the State. Maldonado did not testify or present any evidence. The trial court found Maldonado guilty of drug trafficking in the second degree. In announcing its verdict, the trial court stated:

> [Some] of the things I looked at was the fact that there is really no direct evidence that ties [Maldonado] to the methamphetamine, i.e., there is no drugs that were found on him. He didn't confess or anything like that.
>
> * * *
>
> Something else I looked at was the location of the Tom Tom GPS. State's Exhibits 18 and 21 shows the GPS was not only on the passenger side, but it was completely over on the passenger side to the point where it was near the end of the window or end of the window on the passenger side.
>
> I also considered the inconsistencies of the statements of the [men] as to the destination, the reason for the trip, and the length of their relationship with each other.
>
> I also considered that the [men] were not on each other's cell phones as contacts. And quite honestly it seems unreasonable that you would know somebody for three months or 12 months and have such a relationship that you wouldn't have been added on a cell phone and that you would be trusted to travel for $43,000 worth of methamphetamine.
>
> I am finding [Maldonado] not guilty of trafficking in the first degree as charged. However, I do find and believe beyond a reasonable doubt that [Maldonado] and [Torres] possessed more than 90 grams of methamphetamine, a controlled substance, that they knew or were aware of the presence and nature of the controlled substance, that they were acting together with the purposes of committing the offense. And therefore I am finding [Maldonado] guilty of trafficking in the second degree, which is a lesser included offense of trafficking in the first degree.

The trial court subsequently sentenced Maldonado to twenty-five years imprisonment. This appeal followed.

### Sufficiency of the Evidence

In his sole point on appeal, Maldonado challenges the sufficiency of the evidence to support his conviction. Specifically, he contends that there was insufficient additional incriminating evidence to show that he had knowledge and control of illegal drugs hidden in the bed of the truck in which he was a passenger.

Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable

doubt. *State v. Pike*, 162 S.W.3d 464, 475–76 (Mo. banc 2005). The evidence and all reasonable inferences drawn from the evidence are viewed in the light most favorable to the verdict, and any contrary evidence and inferences are disregarded. *Id.* at 476. Great deference is given to the trier of fact. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998).

■ A person commits the crime of trafficking drugs in the second degree if "he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than thirty grams of … methamphetamine, its salts, isomers and salts of its isomers." § 195.223.9. If the quantity of drugs is ninety grams or more but less than four hundred fifty grams, the crime is a class A felony. § 195.223.9(2). "Possessed" or "possessing a controlled substance" as used in section 195.223 is defined in section 195.010(34):

> a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint.

Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the defendant's acts and conduct from which it can be fairly inferred he knew of the existence of the contraband.

*State v. Woods*, 284 S.W.3d 630, 639 (Mo. App. W.D.2009).

■ "In cases involving joint control of an automobile, a defendant is deemed to have both knowledge and control of items discovered within the automobile and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *Id.* (internal quotes and citation omitted). "This additional evidence must demonstrate sufficient incriminating circumstances to permit the inference of a defendant's knowledge and control over the controlled substance." *Id.* at 640 (internal quotes and citation omitted).

■ Additional incriminating circumstances that support an inference of knowledge and control include: (1) finding a large quantity of drugs in the vehicle; (2) drugs having a large monetary value in the vehicle; (3) easy accessibility or routine access to the drugs; (4) the odor of drugs in the vehicle; (5) the presence of the defendant's personal belongings in close proximity to the drugs; (6) making false statements in an attempt to deceive the police; (7) the defendant's nervousness; (8) the defendant's flight from law enforcement; (9) the presence of drugs in plain view; (10) other conduct and statements made by the defendant; and (11) the fact that defendant rented the vehicle. *Id.* The totality of the circumstances is considered in determining whether the evidence of additional incriminating circumstances sufficiently supports an inference of knowledge and control. *Id.; State v. Morgan*, 366 S.W.3d 565, 577 (Mo.App. E.D.2012).

In *State v. Franco–Amador*, 83 S.W.3d 555 (Mo.App. W.D.2002), the defendant was an illegal immigrant from Mexico who was attempting to get from Phoenix, Arizona, to Atlanta, Georgia, to find work. *Id.* at 556. He agreed to pay someone he

met in a convenience store $400 for a ride but would receive a discount if he helped drive. *Id.* While driving, the defendant was stopped for a minor traffic violation. *Id.* The officer asked to search the vehicle because the officer smelled a strong odor of air freshener and spices and both men looked nervous. *Id.* The owner consented to the search, and the officer found over 1100 grams of methamphetamine encased in plastic bags and wrapped in duct tape behind the back seat cushion. *Id.* at 556–57.

This court found that evidence of the defendant's visible nervousness, his flight from the scene after the drugs were found, a roll of duct tape in the passenger compartment, and the odor of air freshener was not sufficient to find the defendant constructively possessed methamphetamine found behind the back seat cushion. *Id.* at 558–59. It explained that the defendant's nervousness and flight could have been attributed to his status as an illegal alien; while duct tape is known to be used to wrap drugs, it also has a number of legitimate, legal uses; and the strong odor was not incriminating because it was the odor of air freshener, not an illegal drug. *Id.* In considering the totality of the circumstances, the court also noted that the evidence showed that the defendant did not own the car, had met the owner for the first time in a convenience store when he was offered a ride, and had never been in the vehicle prior to when it was stopped. *Id.* at 559.

In *State v. Buford,* 309 S.W.3d 350 (Mo. App. S.D.2010), the defendant was the front seat passenger when the car was stopped. *Id.* at 353. The owner of the car was driving, and a third person was in the back seat. *Id.* The officer searched the car after arresting all three occupants on active warrants and discovered a bag with one crack cocaine rock located between the front passenger seat and the door and additional loose crack cocaine rocks in plain view on the floorboard of the front passenger seat. *Id.*

The Southern District found that the State failed to present sufficient evidence to show that the defendant possessed the drugs. *Id.* at 360. It explained that the defendant's mere presence in the car and proximity to the drugs would not support a conviction without additional incriminating evidence. *Id.* at 360–61. It noted that the defendant did not own the car, did not have personal belongings intermingled with the drugs, was not seen moving around in the car in what could be inferred as an attempt to conceal the drugs, and had another plausible explanation for his nervousness—an active warrant for his arrest. *Id.* It was dark outside and no evidence was presented that the inside of the car had been illuminated at some point prior to being pulled over. *Id.* Additionally, it was unknown how long the cocaine had been in those locations in the car and how long or how often the defendant had been in the car. *Id. Cf. Woods,* 284 S.W.3d at 640 (sufficient additional incriminating evidence showing passenger defendant's knowledge of and control over drugs where defendant rented the vehicle for his personal use; over 9000 grams of cocaine salts were in plain view in the trunk; defendant and driver were nervous and attempted to flee; defendant owned the radar detector in the car; two cell phones and a large bundle of cash consisting of hundred dollar bills were found on defendant's person; and defendant made incriminating statements to a bailiff).

■ In this case, the State argues that Maldonado's constructive possession of the methamphetamine was shown with evidence of the large amount of drugs found, the use of a masking agent, Maldonado's navigating the trip in a recognized drug

corridor and attempting to evade a drug checkpoint, his inconsistent story regarding the purpose and destination of the trip and his association with Torres, his nervousness during the stop, and his possession of a cell phone.

■ Sergeant McGinnis found a large quantity of methamphetamine in the truck, four hundred thirty-eight grams, that had a large monetary value, approximately $43,000. However, while Maldonado. was present in the truck, mere presence in a vehicle where contraband is found is insufficient in a joint possession case. *State v. Gonzalez,* 235 S.W.3d 20, 30 (Mo.App. S.D. 2007); *State v. Bristol,* 98 S.W.3d 107, 111 (Mo.App. W.D.2003). The methamphetamine was not in plain view but concealed under the left, rear corner of the bed liner behind the driver's side of the truck. It was not in close proximity to or easily accessible by Maldonado in the passenger seat inside the truck. No evidence was presented that Maldonado's personal belonging were found with the drugs. He did not own the truck, and no evidence was presented as to how long he had been in the vehicle, whether he rode in it on a frequent basis, or had ever been in it before.

Furthermore, the inconsistent stories told by Torres and Maldonado did not necessarily establish that Maldonado made false statements in an attempt to deceive the police. There is no indication that Maldonado was being untruthful about their destination or the length of their association. Moreover, after being told by the sergeant that Maldonado had given a different story about their destination, Torres stated that he had not told Maldonado about picking up the truck in Marshall.

The State argues that the GPS device located on the passenger side of the truck provided evidence supporting Maldonado's involvement in navigating the trip. No evidence was presented that Maldonado owned the GPS device. *Cf. Woods,* 284 S.W.3d at 640. And other than its location in the truck, there is no evidence that he used the device. Even if Maldonado did use it to help the driver on the route, such use did not establish, without additional incriminating evidence, that Maldonado knew of or had control of the methamphetamine. Similarly, Maldonado's possession of a cell phone alone did not establish his constructive possession of the drugs without additional evidence connecting him with the drugs. GPS devices and cell phones have many other legitimate, legal uses. *See Franco–Amador,* 83 S.W.3d at 559.

■ Finally, Sergeant McGinnis testified that Maldonado avoided eye contact, yawned a lot, and appeared nervous. The sergeant also testified that he noticed a strong odor of air freshener in the truck, which sometimes indicates a masking agent used to cover the odor of contraband. Without additional incriminating circumstances to support an inference of knowledge and control, the State can not merely rely on Maldonado's nervousness or the air freshener odor as sole factors to support a conviction. While visible nervousness is probative of a defendant's awareness of the controlled substance, it is merely one incriminating fact that will support a conviction if consistent with the totality of the circumstances. *State v. Villaneuva,* 147 S.W.3d 126, 130–31 (Mo.App. W.D.2004); *Franco–Amador,* 83 S.W.3d at 558. When a defendant has another equally probable reason for marked nervousness, there must be additional incriminating evidence before a permissible inference can be drawn that the defendant had knowledge of and control over drugs located in a vehicle. *Buford,* 309 S.W.3d at 358. Here, Maldonado had another plausi-

ble explanation for his nervousness-an active warrant out for his arrest. Furthermore, the strong odor coming from the truck was the odor of an air freshener, not the odor of illegal drugs. *See Franco–Amador*, 83 S.W.3d at 559.

Considering the totality of the circumstances, the evidence was insufficient to permit the inference that Maldonado had knowledge and control of the methamphetamine found hidden in the bed of the truck. The point is granted.

The judgment of conviction is reversed.

All concur.