

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106283 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | |
| | ) | Honorable Gael D. Wood |
| MARK A. OLIVER, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 16, 2019 |

## Introduction

Mark A. Oliver ("Oliver") appeals from the trial court's judgment following a jury conviction for receiving stolen property. Oliver challenges the sufficiency of the evidence on appeal, maintaining there was insufficient evidence to establish he knowingly received stolen property. Oliver claims evidence that he purchased the air-conditioning unit ("A/C unit") with cut wires for a low price failed to establish that he received the A/C unit knowing it was stolen. Further, Oliver contends the State did not defeat his innocent explanation for his possession of the A/C unit. Because the State adduced evidence of the suspiciously low price, the new condition of the A/C unit but for the cut and crimped tubing and wires, and the inconsistencies in Oliver's account of how he acquired the A/C unit, we find sufficient evidence supported the jury's verdict. Accordingly, we affirm the trial court's judgment.

## Factual and Procedural History

Oliver broke up with his girlfriend ("Mayfield"). On August 27, 2013, Oliver called the police for help when Mayfield attempted to forcibly enter his home. When Officer Andrew Parker ("Officer Parker") arrived, Mayfield left the area and went to a nearby trailer in the Le Chateau Trailer Court ("Le Chateau"). Officer Parker followed Mayfield. When speaking with Officer Parker, Mayfield informed him that she was upset Oliver would not let her inside to retrieve some personal belongings. Mayfield also told Officer Parker that Oliver had an A/C unit in his trailer in the rear bathroom. Due to Mayfield's tone and his personal observations, Officer Parker became suspicious that Oliver's A/C unit was stolen. In his observation of the premises at Le Chateau, Officer Parker noticed that an A/C unit appeared to be visibly missing from the back of a nearby trailer ("No. 2 Le Chateau"). No. 2 Le Chateau was approximately three-hundred feet from Oliver's home. Officer Parker subsequently investigated No. 2 Le Chateau and found cut and crimped copper tubing and wiring attached to the trailer where an A/C unit should have been mounted.

Officer Parker contacted the manager of Le Chateau, Rhonda Strothkamp ("Strothkamp"). Strothkamp was unaware that No. 2 Le Chateau was missing its A/C unit. Strothkamp provided Officer Parker with records identifying the A/C unit's serial number. Strothkamp informed Officer Parker that the A/C unit was installed at No. 2 Le Chateau in June 2012 and cost $1300.00 plus installation. Strothkamp did not give anyone permission to remove the A/C unit from No. 2. Le Chateau.

Officer Parker then returned to Oliver's home. Upon gaining Oliver's consent to enter, Officer Parker observed an A/C unit in the rear bathroom of Oliver's trailer, just as Mayfield had recounted. Officer Parker noticed the copper tubing and wiring coming out of the A/C unit was

2

cut and crimped in a way that was consistent with the tubing and wiring from No. 2. Le Chateau. Officer Parker determined that the serial number on the A/C unit matched the serial number of the A/C unit missing from No. 2 Le Chateau.

When Officer Parker asked Oliver how he acquired the A/C unit, Oliver initially said that two sellers, Andrew Marcotte ("Marcotte") and Cody Clark ("Clark"), sold him the A/C unit for $150.00. Oliver then told Officer Parker that he purchased the A/C unit used from Marcotte, whom he believed legally owned it and needed to sell it quickly due to being behind on payments and facing eviction. Oliver told Officer Parker that Clark had been present at the sale just to assist Marcotte with delivery. Oliver later explained that Marcotte sold him the A/C unit in order to pay Clark, and that Oliver purchased the A/C unit on behalf of James Brown ("Brown").

Officer Parker arrested Oliver. The State charged Oliver with receiving stolen property. The case proceeded to a jury trial. At trial, Oliver testified that he did not find the cuts to the tubing and wiring or the $150.00 price suspicious. Oliver explained it was not unusual for an A/C unit's tubing and wiring to be cut and crimped for removal, and that probably it was cut with the wrong tool, based on his education in heating and cooling system management.

The jury found Oliver guilty of receiving stolen property. The sentencing court sentenced Oliver to five years in prison and suspended execution with five-years' probation. Oliver now appeals.

## Point on Appeal

In his sole point on appeal, Oliver challenges the sufficiency of the evidence supporting his conviction. In particular, Oliver argues that the evidence of cut wires and a low price was insufficient to establish that Oliver received the A/C unit knowing it was stolen.

3

## Standard of Review

We review a challenge to the sufficiency of the evidence for "whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." State v. Lammers, 479 S.W.3d 624, 632 (Mo. banc 2016). We view the evidence in the light most favorable to the verdict, granting the State all reasonable inferences and disregarding all contrary evidence and inferences. Id. Yet we "will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences." Id. We defer to the jury's assessment of "the reliability, credibility, and weight of the witness's testimony." State v. Heidbrink, 546 S.W.3d 597, 600 (Mo. App. E.D. 2018).

## Discussion

A person commits the offense of receiving stolen property "if for the purpose of depriving the owner of a lawful interest therein, he or she receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." Section 570.080.[1] Direct evidence that the defendant knew the property was stolen is rare and not required for the State to meet its burden of proof. Heidbrink, 546 S.W.3d at 601. Rather, the State may use circumstantial evidence to prove that a defendant knowingly retained stolen property. Id.; State v. Shinkle, 340 S.W.3d 327, 331 (Mo. App. W.D. 2011) (citing State v. Langdon, 110 S.W.3d 807, 813 (Mo. banc 2003)). The jury is entitled to consider all of the evidence, facts, and circumstances together to support an inference that the defendant knowingly received stolen property. State v. Bayless, 369 S.W.3d 115, 119 (Mo. App. W.D. 2012).

Oliver disputes the sufficiency of the evidence establishing that he knowingly received stolen property. The State adduced evidence that Officer Parker identified the A/C unit in

---

[1] All statutory references are to RSMo (Cum. Supp. 2011).

Oliver's possession as the recently stolen property from No. 2 Le Chateau by its cut and crimped tubing and its serial number. Evidence of possession of recently stolen property is one relevant circumstance that the jury may consider together with the other facts and circumstances in the case. Langdon, 110 S.W.3d at 816. The State presented evidence that Oliver purchased the A/C unit at a price and condition that would suggest to a bona fide purchaser that the A/C unit was stolen. See Section 570.080.2(3) (denoting evidence that the defendant "acquired the stolen property for a consideration which he or she knew was far below its reasonable value" is admissible to prove the defendant's requisite knowledge); see also Langdon, 110 S.W.3d at 813; State v. Robinson, 752 S.W.2d 949, 951 (Mo. App. S.D. 1988). At trial, the State argued that Oliver's purchase of the A/C unit for $150.00—compared to Strothkamp's testimony that the A/C unit cost $1300.00—was circumstantial evidence that Oliver knew the A/C unit was stolen. See Langdon, 110 S.W.3d at 813. The State also produced evidence that the A/C unit's altered condition—with cut and crimped copper tubing and wiring—further indicated the A/C unit was stolen. See Heidbrink, 546 S.W.3d at 601 (finding the condition and contents of a stolen truck, including a broken window and damaged key ignition, exhibited clear signs the defendant knew it was stolen); Langdon, 110 S.W.3d at 813. We agree that the jury could reasonably infer from the low price and cut tubing and wiring that Oliver knowingly retained stolen property.

The record also shows that Oliver's explanations to Officer Parker of how he acquired the A/C unit were inconsistent. See Bayless, 369 S.W.3d at 119; Langdon, 110 S.W.3d at 813. "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." State v. Holleran, 197 S.W.3d 603, 611 (Mo. App. E.D. 2006) (citing State v. Hineman, 14 S.W.3d 924, 927–28 (Mo. banc 1999)). Oliver testified that he purchased the A/C unit used from a man

5

whom he believed legally owned it and needed to sell it quickly due to facing eviction. However, Oliver gave Officer Parker varied explanations of the transaction and the individuals involved, first naming both Marcotte and Clark as sellers, then clarifying that Marcotte was the seller and Clark helped with delivery, and later indicating that the money was for Clark, but the A/C unit was purchased for Brown. "Suspicious conduct, deceptive behavior, and false statements are facts and circumstances that the jury may consider which can give rise to an inference of a defendant's guilty knowledge." Bayless, 369 S.W.3d at 119; Langdon, 110 S.W.3d at 816 (including evasive or contradictory statements). Based on the evidence at trial, we are persuaded that the jury could have reasonably disbelieved Oliver's account of how he acquired the A/C unit and could have concluded Oliver's explanation to be a false statement and indicative of guilt. See Heidbrink, 546 S.W.3d at 600.

Oliver further alleges that the State did not prove Oliver knowingly retained the A/C unit because the State failed to refute Oliver's plausible innocent explanation. See State v. Cobb, 444 S.W.2d 408, 414 (Mo. banc 1969) (noting that the jury determines credibility and is free to disbelieve a defendant's innocent explanation of his possession of stolen property, even if the explanation is not impeached); State v. Kramer, 534 S.W.2d 281, 284 (Mo. App. S.L.D. 1976). In particular, Oliver maintained he believed that Marcotte legally owned the A/C unit and needed to sell it quickly. Further, Oliver stated that he did not find it suspicious that the A/C unit had cut and crimped wires and a price of only $150.00, despite still being in new condition, because used units sell online for prices as low as $150.00 and $200.00. Oliver explained it was not unusual for an A/C unit's tubing and wiring to be cut and crimped for removal. Oliver further stated that based on his experience in the heating and cooling industry, the condition of the tubing and wiring on the A/C unit was likely due to being cut with the wrong tool. Oliver directs our

attention to State v. Franco-Amador, in which the Western District acknowledged that the defendant's nervousness on being pulled over by an officer was reasonably explained by his undocumented-immigrant status as opposed to his concealment of controlled substances. 83 S.W.3d 555, 558 (Mo. App. W.D. 2002). However, Franco-Amador does not stand for the proposition that we may ignore our standard of review, nor was the defendant's explanation dispositive to the court's holding. Id. at 559 (finding insufficient evidence of constructive possession because the State did not prove the defendant had the power or intention to exercise control over the methamphetamine). Rather, "the credibility of a defendant's explanation as to possession of stolen or allegedly stolen property is a question of fact" solidly within the jury's purview. Kramer, 534 S.W.2d at 284 (internal citations omitted). It falls within the jury's responsibility to decide whether to believe a defendant's proffered innocent explanation. Id. Here, Oliver failed to persuade the jury of his explanation as to how he came into possession of the A/C unit. See Bayless, 369 S.W.3d at 120. Moreover, given our standard of review, we will not invade the province of the jury by reweighing the evidence or making different credibility determinations. Heidbrink, 546 S.W.3d at 600. Our review is limited to determining whether the evidence was sufficient for a reasonable juror to conclude that Oliver knowingly received the stolen A/C unit. See Lammers, 479 S.W.3d at 632. Because we find sufficient evidence supported Oliver's guilt, we affirm the jury's verdict. See id. Point denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.

7